STATE of Wisconsin, Plaintiff-Respondent,

v.

David G. STRASZKOWSKI,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2006AP64–CR. Oral argument January 16, 2008.*
*—Decided June 19, 2008.*

2008 WI 65

(Also reported in 750 N.W.2d 835.)

261

For the defendant-appellant-petitioner there were briefs by *Philip J. Brehm,* Janesville, and oral argument by *Philip J. Brehm.*

For the plaintiff-respondent the cause was argued by *Eileen Pray,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. The defendant, David G. Straszkowski, seeks review of an unpublished court of appeals order[1] summarily affirming a judgment and order of the Circuit Court for Clark County, Jon M. Counsell, Judge. Based upon the defendant's plea of guilty, the circuit court convicted the defendant of second-degree sexual assault of a child contrary to Wis. Stat. § 948.02(2) (2003–04).[2] The circuit court denied the defendant's post-sentencing motion to withdraw his guilty plea.

¶ 2. The issue on review is whether the circuit court erred in denying the defendant's motion to withdraw his plea. The defendant argues that he is entitled to withdraw his plea on the ground that his plea was not entered knowingly, intelligently, and voluntarily.[3] Specifically, the defendant contends that his plea was

---

[1] *State v. Straszkowski,* No. 2006AP64–CR, unpublished slip op. (Wis. Ct. App. Sept. 12, 2006).

[2] All further references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

[3] "When a guilty plea is not knowing, intelligent, and voluntary, a defendant is entitled to withdraw the plea as a

not knowing and intelligent because he was unaware that a charge dismissed but read in under a plea agreement is deemed admitted for purposes of sentencing the defendant on the charge to which the defendant pled guilty.[4]

¶ 3. We conclude that the record clearly demonstrates that neither the State, nor trial defense counsel, nor the circuit court referred to the read-in charges as admitted or deemed admitted for sentencing purposes or for any other purpose. Nowhere in the plea questionnaire, in the transcript of the plea hearing, or in the transcript of the sentencing hearing did the State, trial defense counsel, or the circuit court refer to the read-in charges as admitted or deemed admitted. Rather, the circuit court explicitly advised the defendant at sentencing (and repeated this explanation at the postconviction motion hearing) that it understood that the defendant was not admitting the read-in charge and that the circuit court would consider the read-in charge for purposes of sentencing the defendant on the charge to which the defendant pled guilty. Because the circuit court did not consider the read-in charge to be admitted for sentencing purposes, we conclude that the defendant has failed to show that his guilty plea was not entered knowingly, intelligently, and voluntarily when he asserts that he was unaware that his agreement to have a sexual assault charge read in was an admission of the read-in charge for purposes of sentencing.

matter of right because such a plea violates fundamental due process." *State v. Brown*, 2006 WI 100, ¶ 19, 293 Wis. 2d 594, 716 N.W.2d 906 (citation and internal quotation marks omitted).

[4] In the present case, the defendant does not assert that the plea was entered into involuntarily.

¶ 4. The defendant further argues that under Wisconsin case law the circuit court arguably had an obligation to deem the read-in charge admitted by the defendant for sentencing purposes based on the defendant's agreement to have the charge read in, and that because the defendant was unaware of having made an admission to the read-in charge for sentencing purposes, he did not knowingly and intelligently plead guilty to the charged sexual assault. The defendant urges this court to impose an explicit duty on a circuit court to notify a defendant at the time the defendant enters a guilty plea that the defendant's agreement to read in a dismissed charge is deemed to be an admission of the read-in charge for purposes of sentencing.

¶ 5. Although the case law on read-in charges is neither consistent nor clear, a proper reading of the history of Wisconsin's read-in procedure demonstrates that it is not a critical component of a read-in charge that the defendant admit guilt of the charge (or that the defendant's agreement to read in the charge be deemed an admission of guilt) for purposes of sentencing. In sum, no admission of guilt from a defendant for sentencing purposes is required (or should be deemed) for a read-in charge to be considered for sentencing purposes and to be dismissed. To avoid confusion, prosecuting attorneys, defense counsel, and circuit courts should hereafter avoid (as they did in the instant case) the terminology "admit" or "deemed admitted" in referring to or explaining a defendant's agreement to read in a dismissed charge. A circuit court should advise a defendant that it may consider read-in charges when imposing sentence but that the maximum penalty of the charged offense will not be increased; that a circuit court may require a defendant to pay restitution on any read-in charges; and that the State is prohibited from future prosecution of the read-in charge.

¶ 6. Although we hold that no admission of guilt from a defendant is required for a read-in offense to be dismissed and considered for sentencing purposes, this decision does not bar a circuit court from accepting a defendant's admission of guilt of a read-in charge. This decision does not address what plea colloquy duties a circuit court might have with respect to such an admission, the issue the defendant raises.[5] Our narrow holding is that an admission of guilt is not required by our read-in procedure and that the circuit court should avoid the terminology "admit" or "deemed admitted" in referring to or explaining a read-in charge for sentencing purposes except when a defendant does admit the read-in charge.

¶ 7. The present case does not involve an award for restitution. Nothing in this opinion should be construed as expanding or restricting the circumstances in which restitution may be imposed.

¶ 8. For the reasons set forth, we affirm the decision of the court of appeals affirming the circuit court's order denying the defendant's motion to withdraw his guilty plea.

I

¶ 9. We briefly summarize the facts relating to the defendant's plea agreement and sentencing hearing.

---

[5] The concurrence concludes that a defendant's agreement to read in a charge for consideration at sentencing may be deemed an admission of guilt of the read-in charge for sentencing purposes. Concurring op., ¶ 1. The concurrence also seems to conclude that the circuit court has no plea colloquy duties with respect to the defendant's deemed admission of guilt, although the concurrence opines that the "best practice" is for the circuit court to inform the defendant about the admission. *Id.*, ¶ 15.

¶ 10. The State charged the defendant with two sexual assault offenses, one offense involving possession of drug paraphernalia, and two worthless check offenses.

¶ 11. The defendant stated on a completed "Plea Questionnaire/Waiver of Rights" form that he intended to plead guilty to one sexual assault charge, the single drug paraphernalia charge, and one worthless check charge. The completed Plea Questionnaire/Waiver of Rights form also stated that the defendant's plea agreement would be set forth in circuit court as follows: "Remaining charges and cases to be dismissed; PSI [presentence investigation] jointly requested, and parties will be free to argue."

¶ 12. On the completed Plea Questionnaire/ Waiver of Rights form, a check mark was placed next to a statement that explained read-in charges as follows: Charges that are read in as part of the plea agreement may be considered by the circuit court when imposing sentencing but will not increase the maximum penalty; the defendant may have to pay restitution on any charges read in; and the State may not prosecute the defendant for any read-in charges. The statement checked on the completed Plea Questionnaire/Waiver of Rights form was as follows:

> I understand that if any charges are read-in as part of a plea agreement they have the following effects:
>
> • Sentencing — although the judge may consider read-in charges when imposing sentence, the maximum penalty will not be increased.
>
> • Restitution — I may be required to pay restitution on any read-in charges.
>
> • Future prosecution — the State may not prosecute me for any read-in charges.

266

¶ 13. At the hearing on the defendant's guilty plea, the prosecuting attorney stated in open court that the two charges to which the defendant did not plead guilty would be "dismissed and read in." Defense counsel then filed the Plea Questionnaire/Waiver of Rights form[6] and informed the circuit court of the defendant's guilty pleas to the charges of sexual assault, possession of drug paraphernalia, and issuance of a worthless check. Defense counsel stated that if the circuit court accepted the guilty pleas and found the defendant guilty of the three offenses, he understood that the State would move "to dismiss but [have the circuit court] consider for sentencing purposes" the remaining sexual assault and worthless check charges.

¶ 14. Immediately after defense counsel made this statement, the circuit court engaged the defendant in a colloquy to "ascertain" the "promises [that] were made in connection with the defendant's anticipated plea . . . ."[7] and questioned the defendant regarding the completed Plea Questionnaire/Waiver of Rights form signed by the defendant. This colloquy began as follows after the statements of the prosecuting attorney and

---

[6] The form is Form CR-227 adopted by the Judicial Conference pursuant to Wis. Stat. §§ 971.025 and 758.18(1).

[7] "During the course of a plea hearing, the [circuit] court must address the defendant personally and . . . (2) Ascertain whether any promises . . . were made in connection with the defendant's anticipated plea . . . ." *Brown,* 293 Wis. 2d 594, ¶ 35 (citing *State v. Bangert,* 131 Wis. 2d 246, 262, 389 N.W.2d 12 (1986)).

WIS JI—Criminal SM-32, which has been cited repeatedly with approval by this court and which this court has urged circuit courts to follow, states: "If there is a plea agreement, put it on the record and establish the defendant's understanding of the agreement."

defense counsel describing the plea agreement and read-in charges:

> THE COURT: Mr. Straszkowski, is that your understanding of what is happening here today?
>
> DEFENDANT: Yes.
>
> THE COURT: And your attorney has given me a plea questionnaire and waiver of rights form. Have you reviewed that form?
>
> DEFENDANT: Yes.
>
> THE COURT: And have you read through it?
>
> DEFENDANT: Yes.
>
> THE COURT: Do you believe you understand its contents?
>
> DEFENDANT: Yes.
>
> THE COURT: It appears that you signed it on the second page. Is that correct?
>
> DEFENDANT: Yes.
>
> THE COURT: You did that earlier today?
>
> DEFENDANT: Yes.
>
> THE COURT: Any questions about the form or the recommendations being made here today?
>
> DEFENDANT: No.
>
> THE COURT: And the form says you haven't had any alcohol, medications, or drugs in the last 24 hours. Is that correct?
>
> DEFENDANT: Yes.

THE COURT: Anything else that would cause you to be confused or unclear as you are making these decisions today?

DEFENDANT: No.

THE COURT: Did you need any more time to discuss this with your lawyer?

DEFENDANT: No.

¶ 15. Later during the plea hearing, the defendant pled guilty to the three charges in accordance with the plea agreement. The circuit court convicted the defendant of the three charges to which the defendant pled guilty and stated that the remaining sexual offense charge and worthless check charge "are dismissed and read in for purposes of sentencing consideration and restitution if need be."[8]

¶ 16. At the sentencing hearing, defense counsel stated that the defendant maintained his innocence of the dismissed but read-in sexual assault charge. Defense counsel also asserted that he was confident he could have proven the defendant innocent of that charge had the matter gone to trial.

¶ 17. The circuit court acknowledged that "[t]here is some denials [sic] with regard to the read-in" and that "there seems to be some considerable dispute" over the

---

[8] Although both the dismissed sexual assault charge and the dismissed worthless check charge were read in for sentencing purposes, the defendant did not challenge the circuit court's read-in of the dismissed worthless check charge. There is no evidence in the record that the circuit court considered the dismissed worthless check charge when sentencing the defendant.

Before this court, the defendant similarly limits his challenge to the circuit court's read-in of the dismissed sexual assault charge.

269

charges pending in another county. The circuit court never considered the read-in charge or the charges in another county[9] "admitted" but considered these charges during sentencing as an indication that the defendant was placing himself in questionable situations involving underage girls.

¶ 18. The circuit court explained that the read-in charge and the charges pending in the other county weighed in favor of confinement because the conduct underlying each charge was alleged to have occurred after the defendant had been made aware of the sexual offense charge to which the defendant had pled guilty. The circuit court concluded that the read-in charge demonstrated that even after he had been made aware of the initial sexual assault charge, the defendant "continued to place himself in a questionable situation where those types of allegations could be made."

¶ 19. The circuit court sentenced the defendant to five years' confinement and ten years' extended supervision on the sexual assault charge. The circuit court also sentenced the defendant on the drug paraphernalia and worthless check charges but provided that the defendant would serve his sentence on those charges concurrently with his sentence on the sexual assault charge. The presentence report recommended jail and probation. Restitution was not claimed or awarded on the sexual assault offense.

¶ 20. After sentencing, the defendant moved to withdraw his guilty pleas, arguing that he did not make those pleas knowingly and intelligently. In his motion, the defendant stated that when he entered his pleas, he "was not aware of what it meant for a charge to be

---

[9] The record indicates that each of these charges was later dismissed.

read-in" in that he "was unaware that pursuant to case law, a read-in offense is deemed admitted by [the] defendant." The motion also stated that the defendant had consistently maintained that he was innocent of the dismissed sexual assault charge and that if he had known that the allegations underlying the charge were "going to be considered as true at the time of sentencing, [the defendant] would not have entered his pleas."

¶ 21. At the postconviction hearing on the defendant's motion to withdraw his plea, the defendant's trial counsel agreed that he had never informed the defendant that the read-in charges "would be deemed admitted for purposes of sentencing" or that "the [circuit] court would . . . conclude [the defendant] committed" the alleged offense underlying the read-in charge.

¶ 22. The defendant's trial counsel testified that he and the defendant had "spent quite a bit of time talking about the effect not only of the read-in charge, but also the fact that he was facing unrelated conduct in another county." Counsel testified that he believed it doubtful that the defendant would have been convicted of the read-in sexual offense and that the defendant consistently denied the read-in charge. The defendant's trial counsel further testified that he had explained to the defendant that although the defendant would not be convicted or sentenced separately for the dismissed but read-in sexual assault charge, the circuit court "might consider that conduct when imposing sentence on the assault that he was pleading guilty to." Defense trial counsel also stated that he believed at the time and "still believe[s] today that [the defendant] understood that the judge, although he wasn't convicting him of the other assault, he would certainly consider that assault when trying to decide what [the defendant] required for punishment and what the public required for protection."

¶ 23. The defendant testified at the postconviction hearing that he did not understand that the circuit court would read in the dismissed sexual assault charge or that the circuit court could consider the charge for purposes of sentencing the defendant on the charge to which the defendant had pled guilty. The defendant acknowledged that he had discussed the significance of read-in charges with his trial counsel on at least two occasions. The defendant also acknowledged that he heard it stated at the plea hearing that the dismissed sexual assault charge would be considered for sentencing purposes. The defendant testified that upon hearing this statement he "thought they made a mistake," because his plea agreement said "nothing about [a] read-in." The defendant further testified that at the plea hearing he asked his trial counsel, "[W]hy are they saying read-in?" and that his counsel replied that they "would talk about it later."

¶ 24. Upon completion of the hearing on the defendant's plea withdrawal motion, the circuit court found the defendant's trial counsel's testimony to be credible and the defendant's testimony to be incredible. The circuit court found that the defendant had understood at the time of his guilty plea that the dismissed sexual assault charge would be read in and that it could be considered at sentencing.

¶ 25. The circuit court denied the defendant's motion to withdraw his guilty pleas. The circuit court explained that it had not looked to the read-in charge or the charges pending in the other county "as things that definitively happened," but rather that the circuit court was "looking at those matters as [the defendant] continually placing himself in a situation where he is associating with underage persons sufficiently that they know who he is and for some reason would make these types of allegations against him." The circuit court further asserted that it had looked at the read-in

272

charge and the charges pending in the other county "in the same way."

¶ 26. The court of appeals summarily affirmed the circuit court's judgment of conviction and order denying the defendant's motion to withdraw his guilty plea. In so doing, the court of appeals applied its prior decision in *State v. Lackershire*, 2005 WI App 265, 288 Wis. 2d 609, 707 N.W.2d 891, in which the court of appeals held that "[b]ecause read-ins do not increase the range of punishment, they are indirect consequences and their knowledge is not required for a defendant to enter a knowing, intelligent, or voluntary plea."[10] Upon review of *Lackershire*, this court explicitly declared that it did "not adopt the court of appeals' determinations [in *Lackershire*, 288 Wis. 2d 609] that read-in charges are merely collateral consequences of a plea, and that therefore information about read-ins is not a prerequisite to entering a knowing and intelligent plea."[11] The *Lackershire* court declined "to engage in further analysis regarding the circuit court's obligation to explain the nature of read-in offenses in a case where the record demonstrates that the dismissed charges were not treated as read-ins at either the plea or sentencing."[12] This court's full discussion of the court of appeals' determinations in *Lackershire* is as follows:

> We do not adopt the court of appeals' determinations that read-in charges are merely "collateral consequences" of a plea, and that therefore information

---

[10] *State v. Lackershire*, 2005 WI App 265, ¶ 15, 288 Wis. 2d 609, 707 N.W.2d 891 (footnote omitted).

[11] *State v. Lackershire*, 2007 WI 74, ¶ 28 n.8, 301 Wis. 2d 418, 734 N.W.2d 23 (citation and internal quotation marks omitted).

[12] *Id.*

about read-ins "is not a prerequisite to entering a knowing and intelligent plea." *Lackershire,* 288 Wis. 2d 609, ¶ 15, 707 N.W.2d 891 (citing *State v. Byrge,* 2000 WI 101, ¶ 61, 237 Wis. 2d 197, 614 N.W.2d 477). Those determinations appear to extend existing law. *See Austin v. State,* 49 Wis. 2d 727, 734, 183 N.W.2d 56 (1971) (stating that "[a] plea agreement should always be made a matter of record whether it involves a recommendation of sentencing, a reduced charge, a *nolle prosequi* of charges or read ins with an agreement of immunity."); *Garski v. State,* 75 Wis. 2d 62, 77, 248 N.W.2d 425 (1977) (providing that "[t]he defendant should be advised by the trial court, on the record, of the effect of the read-ins. . . . "). We decline to engage in further analysis regarding the circuit court's obligation to explain the nature of read-in offenses in a case where the record demonstrates that the dismissed charges were not treated as read-ins at either the plea or sentencing.[13]

¶ 27. Before this court, the defendant does not dispute the circuit court's finding that the defendant understood at the time of his plea that the dismissed sexual assault charge would be read in and that the charge could be considered at sentencing. The defendant instead limits his argument to the claim that he did not understand that the read-in charge was to be deemed admitted for sentencing purposes.

II

■
¶ 28. We turn first to the standard of review. Because the defendant seeks to withdraw his guilty plea after sentencing, he must show that a refusal to allow withdrawal of the plea would result in manifest injus-

---

[13] *Id.*

tice.[14] Manifest injustice may be shown when the defendant's guilty plea was not made knowingly, intelligently, and voluntarily.[15]

¶ 29. Whether a plea was made knowingly, intelligently, and voluntarily is a question of constitutional fact.[16] Upon review, this court upholds the circuit court's findings of evidentiary or historical facts unless those findings are clearly erroneous. This court determines the application of constitutional principles regarding a knowing, intelligent and voluntary plea to those evidentiary facts independently of the circuit court and court of appeals but benefiting from those courts' analyses.[17]

III

¶ 30. The defendant claims that he did not understand that by agreeing to have the sexual assault charge read in, he was admitting or would be deemed to have admitted the read-in charge for sentencing purposes.[18]

---

[14] *State v. Thomas,* 2000 WI 13, ¶ 16, 232 Wis. 2d 714, 605 N.W.2d 836.

[15] *Brown,* 293 Wis. 2d 594, ¶ 18.

[16] *Lackershire,* 301 Wis. 2d 418, ¶ 24.

[17] *Id.*

[18] We accept the defendant's assertion that he did not understand his agreement to have the sexual assault charge read in and considered for sentencing purposes to be an admission that he was guilty of the read-in charge. Trial defense counsel acknowledged at the postconviction hearing that he did not explain the read-in agreement to the defendant as constituting an admission of guilt and further acknowledged that the defendant consistently denied that he was guilty of the read-in charge. The record also shows that the defendant never made

He asserts that his failure to understand that the read-in involved an admission for purposes of sentencing renders his guilty plea not knowing and not intelligent.

¶ 31. The defendant apparently contends that his plea was not entered knowingly and intelligently for the following reasons:

(A) The defendant was unaware that the circuit court would deem the sexual assault charge dismissed but read in under the defendant's plea agreement to be admitted by the defendant for sentencing purposes;

(B) The defendant did not admit guilt of the read-in charge but instead actively denied guilt of the read-in charge;

(C) The circuit court was required to advise the defendant that the read-in charge was to be deemed admitted for sentencing purposes;

(D) The circuit court was required under *State v. Bangert*, 131 Wis. 2d 246, 270–72, 389 N.W.2d 12, to ascertain whether the defendant understood that by admitting guilt of the read-in charge he was waiving several constitutional rights with respect to that charge; and

(E) Trial defense counsel failed to advise the defendant that when a charge is read in, the defendant is admitting guilt of the read-in charge for purposes of sentencing or is deemed to have admitted guilt for purposes of sentencing, and therefore under a

---

any statement, or agreed to any statement, suggesting that the read-in charge was an offense that the defendant had actually committed. Furthermore, at the sentencing hearing the defendant stated, through his counsel, that he was innocent of the read-in charge.

276

*Nelson/Bentley*[19] analysis the defendant has demonstrated that his guilty plea was not entered knowingly and intelligently regardless of whether the court's plea colloquy was defective.

## A

¶ 32. The defendant's argument that his plea was not entered knowingly and intelligently because he was unaware that the circuit court would deem the read-in sexual assault charge to be admitted for sentencing purposes is unconvincing. Nowhere did the circuit court conclude that the defendant admitted (or was deemed to have admitted) the sexual assault charge that was read in or that the defendant was guilty of the read-in sexual assault charge.

¶ 33. The circuit court never deemed the read-in sexual assault charge to be admitted. The record demonstrates that neither the State, nor trial defense counsel, nor the circuit court referred to the read-in charges as admitted or deemed admitted. Nowhere in the plea questionnaire, in the transcript of the plea hearing, or in the transcript of the sentencing hearing did the State, defense counsel or the circuit court refer to the read-in charges as admitted or deemed admitted.

¶ 34. The circuit court acknowledged that "[t]here is [sic] some denials with regard to the read-in" and that "there seems to be considerable dispute" over the charges pending in another county. The circuit court explicitly advised the defendant at sentencing (and repeated this explanation at the postconviction hearing) that it understood that the defendant was not admitting the read-in charge.

---

[19] *State v. Howell,* 2007 WI 75, ¶ 2, 301 Wis. 2d 350, 734 N.W.2d 48; *State v. Bentley,* 201 Wis. 2d 303, 548 N.W.2d 50 (1996); *Nelson v. State,* 54 Wis. 2d 489, 195 N.W.2d 629 (1972).

¶ 35. The circuit court treated the read-in charge properly, not as an admitted crime but as an offense that may properly be considered for sentencing purposes.

██

¶ 36. The circuit court treated the read-in charge in the same way as it treated the sexual assault charges pending against the defendant in another county and did not give the read-in charge more weight than it gave the pending charges in the other county. It is well established that "[a] sentencing court may consider uncharged and unproven offenses" whether or not the defendant consents to having the charge read in.[20]

¶ 37. The circuit court's consideration of the read-in charge when sentencing the defendant did not flow only from the parties' agreement to read in the sexual assault charge for sentencing purposes. The circuit court treated the read-in in the same manner as it treated other pending charges or unproven offenses.

██

¶ 38. Under the circumstances of the present case, the circuit court was not required to advise the defendant that the read-in charge would be deemed

---

[20] *State v. Leitner,* 2002 WI 77, ¶ 45, 253 Wis. 2d 449, 646 N.W.2d 341.

*See also State v. McQuay,* 154 Wis. 2d 116,.126, 452 N.W.2d 377 (1990) ("Evidence of unproven offenses involving the defendant may be considered by the court for" the purpose of "determining the character of the defendant and the need for his incarceration and rehabilitation."); *Elias v. State,* 93 Wis. 2d 278, 284, 286 N.W.2d 559 (1980) ("[T]he trial court in imposing sentence for one crime can consider other unproven offenses, since those other offenses are evidence of a pattern of behavior which is an index of the defendant's character, a critical factor in sentencing.") (citations omitted).

admitted for purposes of sentencing. The circuit court concluded not that the defendant was guilty of the read-in charge, but rather that the read-in charge and the charges pending in the other county demonstrated that even after he had been made aware of the initial sexual assault charge against him, the defendant "continued to place himself in a questionable situation where those types of allegations could be made."[21]

¶ 39. Because the circuit court never treated the defendant as having admitted (or as having been

---

[21] At the hearing on the defendant's motion to withdraw his plea, the circuit court again explained that it had not looked to the read-in charge or the charges pending in another county "as things that definitively happened," but that the court was rather "looking at those matters as [the defendant] continually placing himself in a situation where he is associating with underage persons sufficiently that they know who he is and for some reason would make these types of allegations against him."

The defendant also argues that although the circuit court acknowledged that the defendant denied guilt of the read-in charge, the court identified this denial as a factor weighing in favor of more severe punishment. The defendant appears to suggest a relationship between the circuit court's acknowledgment that "[t]here is some denials [sic] with regard to the read-in" and the court's immediately preceding discussion of the defendant's "blame-shifting issues."

The record does not bear out the defendant's claim. The transcript is clear that the circuit court did not adduce the defendant's protestation of innocence in regard to the read-in charge as an instance of blame-shifting. In discussing the defendant's blame-shifting issues, the court cited the presentence investigation, which criticized the defendant for attempting to shift moral blame and responsibility to the victim of the sexual assault to which the defendant pled guilty. The circuit court's discussion of blame-shifting very clearly regarded the defendant's failure to accept moral responsibility for the con-

deemed to have admitted) the read-in charge, the defendant's argument that his plea was not entered knowingly, intelligently, and voluntarily because he was unaware that the circuit court would deem the read-in sexual assault charge to be admitted for sentencing purposes is unconvincing.

### B

¶ 40. The defendant is correct that he denied guilt of the read-in charge. Indeed, the circuit court acknowledged that the defendant actively denied guilt of the read-in charge and did not admit the read-in charge for any purpose. The circuit court never characterized the defendant as having admitted or as having been deemed to have admitted the read-in charge for any purpose. Under these circumstances, the defendant's assertion that he denied guilt of the read-in charge is not a persuasive argument that his guilty plea was not entered knowingly and intelligently.

### C

¶ 41. The defendant appears to argue that the circuit court was required to advise him that the read-in charge was to be deemed admitted for sentencing purposes. Two cases are relevant to this argument: *Garski v. State,* 75 Wis. 2d 62, 77, 248 N.W.2d 425 (1977); and *State v. Cleaves,* 181 Wis. 2d 73, 510 N.W.2d 143 (Ct. App. 1993).

¶ 42. In *Garski,* the defendant argued that "the trial court never informed him that it could order restitution as a condition of probation on . . . dismissed

duct that resulted in the defendant's conviction, not the defendant's failure to admit guilt to charges of which the defendant was not convicted.

[read-in] charges . . . ."[22] The *Garski* court nevertheless upheld the circuit court's order of restitution as a condition of probation on the dismissed read-in charges. The *Garski* court concluded that the trial court had to inform the defendant of the statutory penalties for the charged offenses but that Garski had no authority for his argument that the trial court must inform him that restitution could be a condition of probation for the read-in offenses prior to accepting a guilty plea.[23]

¶ 43. The *Garski* court "cautioned," however, that "when the plea agreement contemplates the non-prosecution of uncharged offenses, the details of the plea agreement should be made a matter of record"[24] and that "[t]he defendant should be advised by the trial court, on the record, of the effect of the read-ins, including that the judge may take these offenses into consideration when sentencing."[25] The *Garski* court did not state whether this caution regarding how the trial court should advise a defendant about read-in charges was a recommendation of good practice or a requirement for a knowing, intelligent, and voluntary plea.[26]

---

[22] *Garski v. State*, 75 Wis. 2d 62, 75, 248 N.W.2d 425 (1977).

[23] *Id.* at 76.

[24] *Id.* at 77 (citing *Austin v. State*, 49 Wis. 2d 727, 183 N.W.2d 56 (1971)).

[25] *Garski*, 75 Wis. 2d at 77.

[26] *Id.* at 73–74. *Garski*'s caution was based on a similar caution in *Austin v. State*, 49 Wis. 2d 727, 734, 183 N.W.2d 56 (1971), which we discuss later. *Garski* declared that in the absence of a statute allowing for restitution when a sentence of imprisonment is imposed, a trial court could not order restitution for the three offenses for which the trial court imposed a sentence of imprisonment but could, in imposing probation for the fourth charged offense, order restitution for a read-in offense as a condition of probation.

The *Garski* court also did not specifically require or caution a trial court to advise a defendant that a read-in involves or entails an admission of guilt to the read-in offense.

¶ 44. In *Cleaves,* another restitution case, the court of appeals "suggest[ed]," but did not require, that trial courts "ask the defendant if there is an admission to the read-in charge for purposes of sentencing consideration."[27] The *Cleaves* court of appeals stated that it "believe[d] that this is the better practice."[28]

¶ 45. *Cleaves* makes clear that a trial court is not required to advise a defendant that a read-in charge is to be deemed admitted for sentencing purposes. In light of *Cleaves,* the *Garski* court's ambiguous "caution" must be read as precatory, at least with respect to the circuit court's obligation to advise the defendant that a read-in charge is to be deemed admitted for sentencing purposes.

¶ 46. Moreover, as we stated previously, the circuit court in the present case never considered the dismissed read-in charge or the sexual assault charges in another county to have been "admitted" by the defendant or to have been deemed admitted for sentencing or for any other purpose. Even *Garski*'s precatory caution and *Cleaves*'s recommendation of better practice do not seem to apply to the present case, when the circuit court did not consider the dismissed read-in charge to have been admitted by the defendant or to have been deemed admitted.

¶ 47. We conclude that the circuit court was not required in the instant case under either *Garski* or

---

[27] *Cleaves,* 181 Wis. 2d at 80 n.1, 510 N.W.2d 143 (Ct. App. 1993).

[28] *Id.*

*Cleaves* to advise the defendant that the read-in charge was to be deemed admitted for sentencing purposes.

### D

¶ 48. The defendant asserts that because he is deemed to have admitted a read-in offense when a read-in charge is involved in a plea agreement, the circuit court should have treated the admission to a read-in charge as equivalent to a guilty plea to the read-in charge and should have engaged in a plea colloquy for the guilty plea under *State v. Bangert,* 131 Wis. 2d 246, 248 N.W.2d 425 (1977). The defendant further asserts that the circuit court did not engage in such a colloquy in the present case; that the defendant therefore established a prima facie violation of *Bangert;* and that the State did not rebut the defendant's prima facie case.[29]

¶ 49. Under *Bangert,* a circuit court accepting a guilty plea is required to address the defendant personally and to engage in a colloquy on numerous subjects. Among other things, the court is required to establish the defendant's understanding of the nature of the crime, to ascertain whether a factual basis exists to support the guilty plea, and to inform the defendant of the constitutional rights that are waived by a plea and verify that the defendant understands he is giving up these rights.[30]

¶ 50. The defendant argues that inasmuch as a read-in charge is deemed admitted for sentencing pur-

---

[29] Whether alleged deficiencies in the plea colloquy establish a violation of the circuit court's mandatory duties at a plea hearing is a question of law that we review independently of the circuit court and court of appeals but benefiting from those courts' analyses. *Brown,* 293 Wis. 2d 594, ¶ 21.

[30] *Brown,* 293 Wis. 2d 594, ¶ 35 (citations omitted).

poses, the circuit court was required to adhere to *Bangert* and to advise the defendant that he was waiving, in regard to the read-in charge, the Sixth Amendment right to a jury trial, the Sixth Amendment right to confront one's accusers, and the Fifth Amendment right against self-incrimination.

¶ 51. We disagree with the defendant's *Bangert* argument in the present case. Because the circuit court did not view the read-in charge as either having been admitted by the defendant or as having been deemed to have been admitted by the defendant for sentencing or for any other purpose, the defendant has no basis to argue that the circuit court should have engaged in a full *Bangert* plea colloquy explaining the effect of an admission/guilty plea to the read-in charge.

¶ 52. Rather, at sentencing the circuit court assessed the defendant's character using all the available information, including the read-in sexual assault charge and the sexual assault charges in the other county. The sentencing court was not constrained in considering the read-in charge or the other charges by the *Bangert* rules of a plea colloquy or by the rules of evidence that govern evidence in the guilt phase of a criminal proceeding.[31]

---

[31] *Leitner,* 253 Wis. 2d 449, ¶ 45 ("In Wisconsin, sentencing courts are obliged to acquire the full knowledge of the character and behavior pattern of the convicted defendant before imposing sentence.") (quotation marks and citation omitted); *State v. Arredondo,* 2004 WI App 7, ¶ 53, 269 Wis. 2d 369, 674 N.W.2d 647 (explaining that there is a "well-recognized distinction between the fact-finder's function at the guilt stage, where the fact-finder must determine whether the government has proved a defendant's guilt beyond a reasonable doubt, and the sentencing judge's role, which is to assess the defendant's character using all available information, unconstrained by the rules of

### E

¶ 53. Using a *Nelson/Bentley* analysis, the defendant argues that his guilty plea was not made knowingly and intelligently even assuming that the circuit court had no duty to inform him during the plea colloquy that the read-in sexual assault charge would be deemed admitted for sentencing purposes. The defendant relies on the fact that his trial counsel acknowledged at the postconviction hearing that he did not inform the defendant that the defendant would be deemed to have admitted the read-in sexual assault charge. The defendant argues that his lack of understanding regarding the "admission" aspect of the read-in procedure was vital to his ability to make a reasoned plea decision.

¶ 54. The defendant's *Nelson/Bentley* argument rests primarily on the fallacy that the circuit court sentenced the defendant based on the defendant's conviction of two sexual offenses, the one to which he pled guilty and the one that was read in. The record shows that the circuit court did no such thing, as we have explained previously. The defendant's argument that he would have been better off setting the read-in charge for trial because he believed he would be acquitted makes little sense. The defendant in the instant case was able to deny guilt of the read-in offense and was able to have the read-in offense dismissed without the possibility of further prosecution. The circuit court viewed the read-in sexual assault charge in the same way as it viewed the sexual assault offenses charged in the other county.

---

evidence that govern the guilt-phase of a criminal proceeding.") (citation omitted); Wis. Stat. § (Rule) 911.01(4)(c) (providing that the rules of evidence are inapplicable to sentencing proceedings).

¶ 55. The defendant has not carried his burden to prove that factors extrinsic to the plea colloquy rendered his guilty plea unknowing and not intelligent.[32]

¶ 56. We have considered the defendant's arguments that he did not understand that by agreeing to have the sexual assault charge read in, he was admitting or would be deemed to have admitted the read-in charge for sentencing purposes. His assertion that his failure to understand that the read-in involved an admission for purposes of sentencing renders his guilty plea not knowing and not intelligent is not persuasive. We conclude that because the circuit court never considered the read-in charge admitted or deemed admitted for sentencing purposes on the charge to which the defendant pled guilty, the defendant has failed to show that his plea was not entered knowingly and intelligently.

## IV

¶ 57. The defendant further argues that under Wisconsin case law the circuit court arguably had an obligation to consider the read-in charge as having been admitted by the defendant for sentencing purposes or having been deemed to have been admitted by the defendant for sentencing purposes, and that because the defendant was unaware of having made an admission to the read-in charge for sentencing purposes, he

---

[32] In a *Nelson/Bentley* argument, a defendant's challenge to a guilty plea is based not on the inadequacies of the plea colloquy, but instead on factors extrinsic to the plea colloquy. At a non-*Bangert* postconviction hearing, the defendant has the burden to prove by clear and convincing evidence that his or her plea was not entered knowingly, intelligently, and voluntarily. *Hampton*, 274 Wis. 2d 379, ¶¶ 62–63.

did not knowingly and intelligently plead guilty to the charged sexual assault. The defendant urges this court to impose an explicit duty on a circuit court to notify a defendant at the time the defendant enters a guilty plea that read-in charges are deemed admitted for purposes of sentencing.

■

¶ 58. Although the case law on read-in charges[33] is neither consistent nor clear, a proper reading of the history of Wisconsin's read-in procedure demonstrates that it is not a critical component of a read-in charge

---

[33] We use the term "read-in charge" interchangeably with the terms "read-in offense" and "read-in crime." Our decisions traditionally have referred both to "read-in charges" and "read-in offenses" without drawing a distinction between these two terms. *See Lackershire,* 2007 WI 74, 301 Wis. 2d 418, 734 N.W.2d 23; *State v. Martel,* 2003 WI 70, 262 Wis. 2d 483, 664 N.W.2d 69; *Robinson v. City of West Allis,* 2000 WI 126, 239 Wis. 2d 595, 619 N.W.2d 692; *State v. Floyd,* 2000 WI 14, 232 Wis. 2d 767, 606 N.W.2d 155; *In Interest of R.W.S.,* 162 Wis. 2d 862, 471 N.W.2d 16 (1991); *Austin v. State,* 49 Wis. 2d 727, 183 N.W.2d 56. Some decisions also use the term "read-in crime" without distinguishing this term from "read-in charge" or "read-in offense." *See Robinson,* 239 Wis. 2d 595; *Floyd,* 232 Wis. 2d 767.

The defendant's read-in agreement in the present case was phrased as an agreement to read in a "charge." The defendant's Plea Questionnaire/Waiver of Rights form (Form CR-227, the standard form used in Wisconsin) refers to "read-in charges." At the plea hearing, defense counsel and the circuit court each used the term "charge" when discussing the read-in.

The legislature has chosen to employ the term "read-in crime." *See* Wis. Stat. § 973.20(1g)(b). We do not interpret the legislature's use of the term "read-in crime" as a rejection of this court's case law using the terms "read-in charge" and "read-in offense" interchangeably with each other and with the legislature's term "read-in crime."

287

that the defendant admit guilt to a read-in charge (or be deemed to have admitted guilt to the read-in charge) for purposes of sentencing. In sum, no admission of guilt from a defendant is required (or should be deemed) for a read-in charge to be considered for sentencing purposes and to be dismissed.

¶ 59. We begin our examination of the history of read-in charges in this state with this court's first extensive description of Wisconsin's read-in procedure in *Austin v. State,* 49 Wis. 2d 727, 183 N.W.2d 56 (1971).

¶ 60. In *Austin,* this court considered the validity of a plea agreement in which the district attorney agreed "not to prosecute uncharged offenses if the defendant would agree to a 'read in' of these uncharged offenses and to allow the court to take such offenses into consideration in sentencing him on the charged offense."[34] The court held the plea agreement valid.

¶ 61. Because "the so-called 'read in' of uncharged crimes for the purpose of sentencing on the crime charged [was] somewhat unique to Wisconsin," the *Austin* court prefaced its analysis with "a brief review" of Wisconsin's read-in procedure, along with an accompanying (and intertwined) discussion of "the problems involved in the consolidation of multiple offenses and the problems involved in the application of the recidivist statute."[35]

¶ 62. *Austin* described the read-in procedure by referring to the defendant as admitting the uncharged offenses. The *Austin* court explained that "[u]nder our read-in procedure, the defendant does not plead to any charges and therefore is not sentenced on any of the

[34] *Austin v. State,* 49 Wis. 2d 727, 729, 183 N.W.2d 56 (1971).
[35] *Id.*

read-in charges but such *admitted* uncharged offenses are considered in sentencing him on the charged offense."[36]

¶ 63. The *Austin* opinion does not explicitly state that such admission is an actual admission made by the defendant or, as some cases would later hold, an admission that the court simply assumes to be made as a matter of law based on the defendant's agreement to read in the charge for consideration at sentencing. The facts of *Austin* indicate, however, that the read-in procedure described in that opinion involved the defendant's actual admission of guilt. In its brief in *Austin*, the State asserted that "defendant, represented by counsel, admitted his participation in an additional armed robbery occurring at a Clark Service Station in Milwaukee on the same date."

¶ 64. Furthermore, *Austin* identified *Pulaski v. State*, 23 Wis. 2d 138, 126 N.W.2d 625 (1964), as a read-in case, and *Pulaski* involved an actual admission of guilt to uncharged offenses considered at Pulaski's sentencing hearing. *Austin* stated that in *Pulaski* "this court was confronted with . . . a read in by a Milwaukee circuit court of 21 offenses committed in Milwaukee county, where the defendant was charged and convicted on his plea of guilty to three charges of burglary . . . ."[37] The defendant in *Pulaski* actually admitted guilt to the uncharged offenses considered at his sentencing hearing. Pulaski pled guilty to three burglaries but "with the consent of the defense counsel and upon the assurances of the district attorney no warrants would be issued, [the court] took testimony of other burglaries in which

[36] *Id.* at 732 (emphasis added).
[37] *Id.* at 730.

the defendant had participated. . . . In all, testimony was taken on 24 burglaries *admitted by the defendant.*"[38]

¶ 65. Finally, *Austin* compared and contrasted Wisconsin's read-in procedure to a procedure described in the American Law Institute Model Penal Code under which "the defendant may *admit in open court* the commission of other [uncharged] felonies and ask that they be taken into account" at sentencing for a charged offense.[39] The *Austin* court explained that the Model Penal Code procedure was similar to Wisconsin's

[38] *Pulaski v. State,* 23 Wis. 2d 138, 139–40, 126 N.W.2d 625 (1964) (emphasis added).

Pulaski's brief stated that the court demanded that Pulaski provide "full and open disclosure" involving the uncharged offenses in order to avoid facing "the maximum sentence in each case consecutively." The State's brief in *Pulaski* further asserted that Pulaski had "admitted his involvement" in the uncharged burglaries to the police.

[39] *Austin,* 49 Wis. 2d at 733 (emphasis added).

According to the *Austin* court, the Model Penal Code provided as follows:

> When the defendant has asked that other crimes *admitted in open court* be taken into account when he is sentenced and the Court has not rejected such request, the sentence shall bar the prosecution or conviction of the defendant in this state for any such *admitted* crime.

*Austin,* 49 Wis. 2d at 732 n.2 (quoting Model Penal Code, § 7.05(4)) (emphasis added).

Model Penal Code § 7.03(4) (1985) provides that a court may sentence a convicted felon to an extended term of imprisonment if it finds that the defendant "is a multiple offender whose criminality was so extensive that a sentence of imprisonment for an extended term is warranted." Section 7.03(4) additionally provides that the court may not make such a finding unless certain conditions obtain, including the condition

read-in procedure in that "the sentence [for the charged offense] bars the prosecution of such admitted [but uncharged] crime" and different from the Model Penal Code procedure in that the Code procedure "works like the Wisconsin repeater statute," permitting the trial court to "extend the term of the ordinary maximum penalty for the crime charged by taking into account the other offenses."[40] The *Austin* court did not state whether Wisconsin's read-in procedure differed from (or was the same as) the Model Penal Code procedure in involving a defendant's actual admission of guilt to any uncharged crime read in for sentencing purposes.

¶ 66. In sum, *Austin* appears to describe a read-in procedure as involving the defendant's actual admission of guilt to the read-in charge. The court "cautioned" in *Austin* that "when the plea agreement contemplates the nonprosecution of uncharged offenses the details of the plea agreement should be made a matter of the record."[41]

¶ 67. Another early read-in case, *State v. Gerard,* 57 Wis. 2d 611, 205 N.W.2d 374 (1973), similarly describes the read-in procedure as involving the defendant's actual admission of guilt. Gerard agreed to have 20 uncharged offenses read into the record and to allow the circuit court to take such offenses into consideration in sentencing him on two charged crimes.[42] The defendant made an actual admission, apparently to law

that "the defendant admits in open court the commission of one or more felonies and asks that they be taken into account when he is sentenced."

Model Penal Code § 7.04(4) (1985) establishes a similar procedure for convicted misdemeanants.

[40] *Austin,* 49 Wis. 2d at 733.

[41] *Id.* at 734.

[42] *State v. Gerard,* 57 Wis. 2d 611, 614,. 205 N.W.2d 374 (1973).

291

enforcement officers, that he was guilty of these 20 uncharged crimes.[43] The court was made aware of the defendant's admission and inquired as to the validity of the admission when the court read in the uncharged offenses.[44] The *Gerard* court quoted an excerpt from the circuit court transcript reading in part as follows:

> THE COURT: Have the defendant walk forward. Ronald Gerard, did you admit all those other said [read-in] offenses to the officers freely and voluntarily?
>
> DEFENDANT: Yes.
>
> THE COURT: Were any threats or any promises made by anyone, any police officer or by any law enforcement officer or by anyone involved in this case in any manner, shape or form to get you to admit those offenses?
>
> THE DEFENDANT: No.
>
> THE COURT: Why did you admit them?
>
> THE DEFENDANT: Because I wanted to get everything off the books so I am not any more involved in anything.[45]

¶ 68. Neither *Austin* nor *Gerard* stated that a defendant's admission is required under Wisconsin's read-in procedure. Although describing Wisconsin's read-in procedure as involving the defendant's admission of guilt, neither opinion addresses the question whether a circuit court would err in accepting a read-in agreement in the absence of the defendant's admission of guilt. In other words, *Austin* and *Gerard* do not

---

[43] *Id.* at 620.

[44] *Id.*

[45] *Id.* at 620.

address the question whether a defendant's admission of guilt is a necessary component of the Wisconsin read-in procedure.

¶ 69. In contrast to cases such as *Austin* and *Gerard,* some subsequent cases describe the defendant's admission of a read-in charge not as an actual admission of guilt but rather as an admission as a matter of law that the defendant makes simply by agreeing to read in a dismissed charge. The first of these cases is *State v. Szarkowitz,* 157 Wis. 2d 740, 460 N.W.2d 819 (Ct. App. 1990). *Szarkowitz* addressed read-in offenses in order to apply Wisconsin's restitution statute and interpreted *Austin* in the course of interpreting the statute.

¶ 70. In *Szarkowitz,* the court of appeals rejected Szarkowitz's argument that the circuit court erred in ordering restitution to victims of crimes that were read in as part of Szarkowitz's plea agreement.[46] In interpreting the restitution statute, the court of appeals concluded that the statute's provision that a circuit court may order the defendant to make restitution to "any victim of the crime" authorized the court to order restitution to "victims of any crimes to which the defendant admits as part of the read-in procedure as well as victims of the particular crime for which he is convicted."[47]

¶ 71. In so holding, the court of appeals quoted, relied upon, and interpreted *Austin*'s statement that " '[u]nder our read-in procedure, the defendant does not plead to any charges and therefore is not sentenced on any of the read-in charges but such *admitted* uncharged

---

[46] *State v. Szarkowitz,* 157 Wis. 2d 740, 743, 460 N.W.2d 819 (Ct. App. 1990).

[47] *Id.* at 746, 754.

offenses are considered in sentencing him on the charged offense.' "[48] The court of appeals construed this statement in *Austin* to mean that "when a defendant agrees to crimes being read in at the time of sentencing, he makes an admission that he committed those crimes."[49]

¶ 72. The *Szarkowitz* court of appeals did not explicitly state whether it was construing *Austin* to hold that "when a defendant agrees to crimes being read in at the time of sentencing, he makes[, as part of that procedure, an actual] admission that he committed those crimes" or whether it was instead construing *Austin* to hold that "when a defendant agrees to crimes being read in at the time of sentencing, he [is legally deemed to] make[] an admission that he committed those crimes [even in the absence of an actual admission]." Both interpretations of *Szarkowitz* are permitted by the text of that opinion.

¶ 73. The court of appeals adopted the latter interpretation of *Szarkowitz* in *State v. Cleaves,* 181 Wis. 2d 73, 510 N.W.2d 143 (Ct. App. 1993). In *Cleaves* (another case involving interpretation and application of Wisconsin's restitution statute), the defendant argued that his personal admission to a read-in offense was a condition precedent to the trial court's authority to order restitution for a victim of that read-in charge. The court of appeals explained that Cleaves never voiced any objection to the read-in charges. Relying on *Szarkowitz* and *Austin,* the court of appeals concluded that "[i]n the absence of any objection to . . . crimes being read in, the court *may assume* that the defendant

---

[48] *Id.* at 753 (quoting *Austin*, 49 Wis. 2d at 732) (emphasis in *Szarkowitz*).

[49] *Szarkowitz,* 157 Wis. 2d at 753.

admits them for purposes of being considered at sentencing."[50] The court of appeals further concluded that because the defendant in *Cleaves* "did not object to the crimes being read in, he admitted them."[51]

¶ 74. Although holding that the circuit court "may" assume that the defendant admits of read-in charges for purposes of sentencing, the *Cleaves* court recommended that circuit courts instead expressly ask defendants whether there is an admission to the read-in charge for purposes of sentencing. The *Cleaves* majority declared that "[t]o clarify the record . . . we suggest that trial courts in the future ask the defendant if there is an admission to the read-in charge for purposes of sentencing consideration. We believe that this is the better practice."[52]

¶ 75. Writing in concurrence in *Cleaves,* Judge Nettesheim endorsed and elaborated upon the majority's suggestion "that the trial court expressly obtain an admission from the defendant to a read-in charge."[53] Judge Nettesheim explained that a read-in charge is usually accompanied by three conditions: (1) the defendant acknowledges responsibility for the uncharged or dismissed read-in charge; (2) the defendant agrees that the trial court may consider the read-in charge for purposes of sentencing on the charges for which a defendant is convicted; and (3) the defendant accepts responsibility for restitution relating to the read-in charge.

¶ 76. Judge Nettesheim suggested that a trial court engage in "a personal colloquy with the defendant

---

[50] *Cleaves,* 181 Wis. 2d at 80 (emphasis added).

[51] *Id.* at 79 (emphasis added).

[52] *Id.* at 80 n.1.

[53] *Id.* at 80 (Nettesheim, J., concurring).

under *Bangert*" to establish that the defendant understands these consequences of a read-in charge and to "additionally establish that the defendant understands and accepts *all* of these conditions, or any others which might apply." This procedure, according to Judge Nettesheim, "can minimize the number of postconviction motions and appeals challenging a trial court's use of a read-in charge. And, even where such motion or appeal is brought, the judicial resolution of the issue will often be facilitated."[54]

¶ 77. The opinions in *Cleaves* merely recommended that the trial courts ask defendants in the future whether they are admitting the read-in charge for purposes of sentencing. *Cleaves* did not require the trial courts to do so. *Cleaves* also did not require circuit courts to assume that defendants have admitted guilt of read-in charges for purposes of sentencing, stating instead that courts "may" make such an assumption.

¶ 78. Standing in contrast to cases such as *Austin, Gerard, Szarkowitz,* or *Cleaves,* all of which describe the read-in procedure as involving either an actual or a deemed admission of guilt, are cases describing the read-in procedure without making reference either to the defendant's actual admission of guilt or to a rule that the circuit court may deem the defendant's agreement to read in the charge to an admission that the defendant committed the read-in offense.

¶ 79. *Martinkoski v. State,* 51 Wis. 2d 237, 186 N.W.2d 302 (1971), a case released in the same term as *Austin,* provides one such example. Martinkoski "stipulated to the reading-in of" a charge that the State agreed

[54] *Id.* at 80–81 (Nettesheim, J., concurring).

to dismiss without prejudice.[55] This court described Martinkoski as stipulating to the charge's "consideration in the imposition of a sentence in exchange for the agreement of the state not to prosecute that charge."[56] The *Martinkoski* opinion does not state that Martinkoski admitted guilt of the read-in charge or that he was deemed as a matter of law to admit guilt of the charge. Indeed Martinkoski initially pled not guilty to the charge dismissed and read in.[57] Neither the briefs in *Martinkoski* nor the decision state that he admitted the read-in charge or that he was deemed to have admitted it as a matter of law.

¶ 80. In *Embry v. State*, 46 Wis. 2d 151, 174 N.W.2d 521 (1970), a case cited and quoted in *Austin*, the court distinguished a trial court's practice of considering other offenses for purposes of sentencing from the procedure of the state and the accused agreeing that the trial court may take uncharged offenses into consideration and that the prosecutor may not prosecute those offenses at a later time. The *Embry* court described the latter procedure (the read-in procedure) without referring to the defendant as admitting guilt or as the defendant's agreement to the read-in as constituting an admission of guilt as a matter of law. The *Embry* court instead stated, as the court did in *Martinkoski,* only that a read-in offense is one that may be considered at sentencing and that the State is barred from prosecuting in the future. The *Embry* opinion describes the read-in procedure as follows:

---

[55] *Martinkoski v. State,* 51 Wis. 2d 237, 248, 186 N.W.2d 302 (1971).

[56] *Martinkoski,* 51 Wis. 2d at 248.

[57] *See* the State's brief in *Martinkoski* at App. 101–02.

[The read-in procedure is] a practice in this state, especially in Milwaukee, of charging a multiple offender with two or more offenses for which the evidence is most conclusive and bringing the judge's attention to additional uncharged offenses prior to sentencing. Upon agreement between the state and the accused, the judge may take these offenses into consideration and the prosecution agrees not to prosecute. It is expected the uncharged crimes will influence the length of the sentence for the crime or crimes the defendant has been found guilty of or to which he has plead [sic] guilty. The advantage of this technique to the accused is that he can clean his slate of several uncharged crimes with the safety of only receiving at the most the maximum sentence on the one or two crimes of which he is convicted.[58]

¶ 81. After the read-in procedure developed in the Wisconsin courts, the legislature inserted a definition of read-in crimes into the Wisconsin Statutes. In 1995, two years after the court of appeals mandated *Cleaves* (the latest of the decisions discussed above), a bill was introduced in the Wisconsin State Assembly that included a legislative definition of the phrase "read-in crime" for purposes of the criminal restitution statute. The bill, 1995 Assembly Bill 467, would have defined a "read-in crime" as a crime to which the defendant actually admits guilt. Section 3 of the bill provided in relevant part as follows:

973.20(1g) of the statutes is created to read:

973.20(1g) In this section:

. . . .

---

[58] *Embry v. State,* 46 Wis. 2d 151, 157–58, 174 N.W.2d 521 (1970).

(b) "Read-in crime" means any crime that is uncharged, *that the defendant admits to having committed* and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted.[59]

¶ 82. In a memorandum addressed to the Assembly Judiciary Committee Assembly, the Wisconsin Department of Justice objected to this proposed definition of "read-in crime" on the ground that it "would appear to require that the defendant personally and specifically admit to the read-in offense in order for it to be considered at sentencing for restitution."[60] A transcription of the memorandum is attached as an Appendix hereto. The Department of Justice argued that such a requirement "is inconsistent with the law on read-in offenses" and that under the court of appeals' decisions in *Szarkowitz* and *Cleaves,* restitution was proper so long as the defendant agreed to the read-ins. The Department of Justice memorandum supports a definition of "read-in charges" that allows dismissed read-in

---

[59] 1995 A.B. 467, § 3, LRB-0353/1 (emphasis added).

The Legislative Reference Bureau analysis appearing on the bill's first page further stated that "[r]ead-in crimes are crimes that are not charged, but they are crimes that the defendant admits to and that the court considers when sentencing the defendant."

The analysis also states that the bill was intended to codify the court of appeals' holding in *Szarkowitz* that courts may require a convicted criminal defendant to pay restitution to the victim of a read-in crime. Analysis by the Legislative Reference Bureau, 1995 A.B. 467, LRB-0353/1.

[60] *See* Correspondence/Memorandum: Department of Justice, Aug. 11, 1995, in Bill Drafting File 1995 Wis. Act 141 (available at Wis. Legislative Reference Bureau, 1 East Main St., Madison, Wis.).

charges to be considered for restitution and that dispenses with the "admits" language so that a defendant's personal admission to the read-in charge is not required; the defendant need simply agree that the charge be read in.

¶ 83. The Department of Justice memorandum proposed the following definition of "read-in crime" in the restitution statute:

> "Read-in crime" means any crime that is uncharged *or which is dismissed as part of a plea agreement,* that the defendant *agrees to be considered by the court at sentencing* and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted.

(Emphasis in original.)

¶ 84. The Assembly Judiciary Committee evidently found the Department of Justice memorandum to be persuasive and incorporated the Department's proposed language nearly verbatim into Assembly Amendment 1.[61] The Amendment provided that a read-in crime is a crime "that the defendant agrees to be considered by the court at the time of sentencing."[62]

¶ 85. The language of Assembly Amendment 1 is the language ultimately enacted as the statutory definition of "read-in crime" in the restitution statute. The statutory definition of "read-in crime," enacted by the legislature in 1995 Wisconsin Act 141 and now set forth in Wis. Stat. § 973.20(1g)(b), makes no reference to any sort of admission, whether actual or deemed. Wisconsin Stat. § 973.20(1g)(b) defines "read-in crime" as a crime "that the defendant agrees to be considered by the court

---

[61] Assembly Amendment 1 was offered by the Assembly Judiciary Committee.

[62] Assembly Amendment 1 to 1995 A.B. 467.

at the time of sentencing." The statutory definition of "read-in" crime for purposes of restitution is as follows:

> "Read-in crime" means any crime that is uncharged or that is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at the time of sentencing and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted.

¶ 86. Although not requiring that a defendant admit guilt to a read-in charge (or be deemed to have admitted guilt to the read-in charge) for purposes of sentencing, the statutory definition of "read-in crime" does not bar a circuit court from accepting a plea agreement involving the defendant's admission of guilt of a read-in charge.

¶ 87. The statutory "read-in crime" definition appears in the criminal restitution statute, Wis. Stat. § 973.20, and is additionally incorporated by reference into the statute governing victim statements to be made before sentencing (§ 972.14(3)) and the statute governing sentencing restrictions on contact with victims of, or co-actors in, crimes (§ 972.049). These statutes, like § 973.20(1g)(b) defining "read-in crime," do not at any point refer to a "read-in crime" as a crime that the defendant admits or that the defendant is deemed to have admitted as a matter of law.

¶ 88. Subsequent to *Cleaves* and to the legislature's enactment of a statutory definition for "read-in crime," this court has not necessarily been consistent in describing read-in offenses.

¶ 89. For example, in *State v. Floyd,* 2000 WI 14, ¶ 25, 232 Wis. 2d 767, 606 N.W.2d 155, we cited *Cleaves* in support of the position that "[r]ead-ins *constitute*

admissions by the defendant to those charges" (emphasis added). In *State v. Martel,* 2003 WI 70, ¶ 26, 262 Wis. 2d 483, 664 N.W.2d 69, we appear to have described read-ins as involving an actual admission, stating that *Szarkowitz* held for purposes of the restitution statute that read-in charges applied to crimes "*admitted,* dismissed, and read-in at sentencing for the crime of conviction" (emphasis added). Similarly, in *State v. Lackershire,* 2007 WI 74, ¶ 27 n.7, 734 N.W.2d 23, we cited *Austin* and stated that "[w]hen charges are read in during sentencing, *the defendant admits to having committed the underlying crimes . . .* " (emphasis added).

¶ 90. In *Robinson v. West Allis,* 2000 WI 126, ¶ 42, 239 Wis. 2d 595, 619 N.W.2d 692, the court stated that "[r]ead-in charges have historically served a limited function" and that although they have a preclusive effect of barring a State from future prosecution of the read-in charges, read-in charges "are not otherwise treated as adjudications of guilt."[63] The *Robinson* court further stated that "[c]onsideration of read-in charges during sentencing is not tantamount to actual litigation of the underlying issues. The sentencing court performs no adjudication of the read-in charges . . . ."[64]

¶ 91. In sum, the case law and the restitution statute suggest three different descriptions of the read-in procedure: (1) *Austin*'s and *Gerard*'s description of a procedure involving (though not necessarily requiring) the defendant's actual admission to the read-in

---

[63] The *Robinson* court quoted *Austin,* 49 Wis. 2d at 732: "Read-in offenses are not prior convictions and cannot be used under sec. 973.12, the repeater statute." *Robinson v. West Allis,* 2000 WI 126, ¶ 42, 239 Wis. 2d 595, 619 N.W.2d 692.

[64] *Robinson,* 239 Wis. 2d 595, ¶ 43.

charge for sentencing purposes; (2) the *Cleaves* (and perhaps *Szarkowitz*) rule that "[i]n the absence of any objections to . . . crimes being read in, the court may assume that the defendant admits them for purposes of being considered at sentencing";[65] and (3) the statutory definition (and the description in cases such as *Embry* and *Martinkoski*) making no reference to an admission of the read-in crimes but describing only the effect of a read-in crime, namely that the read-in charge may be considered at sentencing and that the State is barred from future prosecution on the read-in charge. The State asserts, and our research appears to confirm, that Wisconsin would stand alone among the states should this court conclude that a defendant must admit guilt or be deemed to admit guilt for purposes of sentencing when he agrees to a read-in charge.

¶ 92. In reading *Austin,* the subsequent cases, and the criminal restitution statute defining a read-in charge, we conclude that Wisconsin's read-in procedure does not require a defendant to admit guilt of a read-in charge for purposes of sentencing and does not require a circuit court to deem the defendant to admit as a matter of law to the read-in crime for purposes of sentencing. A circuit court should not deem a defendant's agreement to have a charge read in for consideration at sentencing and dismissed on the merits to be an admission of guilt of the read-in charge for purposes of sentencing.

¶ 93. Except when a defendant does in fact admit guilt of a read-in charge, stating that a defendant "admits guilt" of a read-in charge for purposes of sentencing is more likely to confuse than to guide the

---

[65] *Cleaves,* 181 Wis. 2d at 80.

decisions made by a defendant or a sentencing court. It is a better practice for prosecuting and defense counsel and circuit courts to omit any reference to a defendant admitting a read-in crime, except when the defendant does admit guilt, and simply to recognize that a defendant's agreement to read in a charge affects sentencing in the following manner: a circuit court may consider the read-in charge when imposing sentence but the maximum penalty of the charged offense will not be increased;[66] a circuit court may require a defendant to pay restitution on the read-in charges;[67] and a read-in has a preclusive effect in that the State is prohibited from future prosecution of the read-in charge.[68]

¶ 94. To avoid any confusion, prosecuting attorneys, defense counsel, and circuit courts should hereafter avoid (as they did in the instant case) the terminology "admit" or "deemed admitted" in referring to or explaining a defendant's agreement to read in charges.

¶ 95. We withdraw language in the case law that may be read as intimating that when a charge is read in a defendant must admit or is deemed to admit the read-in charge for sentencing purposes.

\* \* \* \*

¶ 96. We conclude that the record clearly demonstrates that neither the State, nor trial defense counsel,

---

[66] *Austin,* 49 Wis. 2d at 732 (*cited with approval in Robinson,* 239 Wis. 2d 595 ¶ 42).

[67] Wis. Stat. § 973.20(1g) &(1r) (*cited in Robinson,* 239 Wis. 2d 595, ¶ 42).

[68] *State v. Floyd,* 2000 WI 14, ¶ 25, 232 Wis. 2d 767, 606 N.W.2d 155 (*cited with approval in Robinson,* 239 Wis. 2d 595 ¶ 42).

nor the circuit court referred to the read-in charges as admitted or deemed admitted for sentencing purposes or for any other purpose. Nowhere in the plea questionnaire, in the transcript of the plea hearing, or in the transcript of the sentencing hearing did the State, trial defense counsel, or the circuit court refer to the read-in charges as admitted or deemed admitted. Rather, the circuit court explicitly advised the defendant at sentencing (and repeated this explanation at the postconviction motion hearing) that it understood that the defendant was not admitting the read-in charge and that the circuit court would consider the read-in charge for purposes of sentencing the defendant on the charge to which the defendant pled guilty. Because the circuit court did not consider the read-in charge to have been admitted for sentencing purposes, we conclude that the defendant has failed to show that his guilty plea was not entered knowingly, intelligently, and voluntarily when he asserts that he was unaware that his agreement to have a sexual assault charge read in was an admission of the read-in charge for purposes of sentencing.

¶ 97. Although the case law on read-in charges is neither consistent nor clear, a proper reading of the history of Wisconsin's read-in procedure demonstrates that it is not a critical component of a read-in charge that the defendant admit guilt to a read-in charge (or that the defendant's agreement to read in the charge be deemed an admission of guilt) for purposes of sentencing. In sum, no admission of guilt from a defendant for sentencing purposes is required (or should be deemed) for a read-in charge to be considered for sentencing purposes and to be dismissed. To avoid confusion, prosecuting attorneys, defense counsel, and circuit courts should hereafter avoid (as they did in the instant case) the terminology "admit" or "deemed admitted" in

305

referring to or explaining a defendant's agreement to read in charges. A circuit court should advise a defendant that it may consider read-in charges when imposing sentence but that the maximum penalty of the charged offense will not be increased; that a circuit court may require a defendant to pay restitution on any read-in charges; and that the State is prohibited from future prosecution of the read-in charge.

¶ 98.　For the reasons set forth, we affirm the decision of the court of appeals affirming the circuit court's order denying the defendant's motion to withdraw his guilty plea.

*By the Court.*—The decision of the court of appeals is affirmed.

CORRESPONDENCE/MEMORANDUM DEPARTMENT OF JUSTICE

Date: August 11, 1995

To: Assembly Judiciary Committee

From: Andy Cohn
 Executive Assistant

Subject: AB 467

 The following is the text of a memo drafted by our criminal
litigation attorneys listing departmental concerns. Thank you for your
attention to this matter:

 AB 467 is an attempt to codify the decision in State v.
Szarkowitz, 157 Wis. 2d 740 (Ct. App. 1990), which held that a
court could order restitution for read-in offenses.

 While there is no problem with the general purpose of the
statute there are some technical problems with the language used
regarding the definition of read-in offenses.

 The proposed statutory definition is:

 [A]ny crime that is uncharged, that the defendant admits
 to having committed and that the court considers at the
 time of sentencing the defendant for the crime for which
 the defendant was convicted.

 First, as "read-in crime" is defined as any crime that is
"uncharged" it creates confusion in light of the normal practice of
dismissing charged offenses and reading them in for purposes of
sentencing. The existing language would appear to exclude such
offenses from being considered for restitution, or at least allow
the argument to be raised on appeal. Thus, a change in the
language would be necessary to accurately reflect the traditional
read-in procedure.

 Second, the statute also defines read-in crime as any crime
that the defendant "admits to having committed." This language
would appear to require that the defendant personally and
specifically admit to the read-in offense in order for it to be
considered at sentencing for restitution.

 However, this is inconsistent with the law on read-in
offenses. As stated in Szarkowitz, "When a defendant agrees to the
crimes being read in at sentencing, he makes an admission that he
committed those crimes." Szarkowitz, 157 Wis. 2d at 753. The
question is only whether the defendant agreed to the crimes being
read-in. Szarkowitz, 157 Wis. 2d at 753. Thus, where a defendant

307

agrees to the read-in offenses he is presumed to have admitted the charges.

The issue of whether a personal admission is required was raised in State v. Cleaves, 181 Wis. 2d 73 (Ct. App. 1993). In that case the defendant argued that restitution on the read-in offenses was improper as he did not personally admit to the offenses. Cleaves, 181 Wis. 2d at 77. The court rejected this argument and held that restitution was proper as the defendant had agreed to the read-ins. Cleaves, 181 Wis. 2d at 80. However, the court also stated in a footnote that "we suggest that trial courts in the future ask the defendant if there is an admission to the read-in charge for purposes of sentencing consideration. We believe that this is the better practice." Cleaves, 181 Wis. 2d at 80, n.1. A similar challenge can be expected to the proposed new statute.

My concern is that if prosecutors and courts do not always ask a defendant to admit the read-in charges, even if restitution is not sought, then a special effort will have to be made when restitution is sought to seek this personal admission. This dual practice may result in some needless confusion. On the other hand, if a personal admission is desirable then the statute does not present a problem. However, as the colloquy suggested in Cleaves is not required this still may result in confusion as a personal admission would only be required in restitution cases. It is only where a standard practice exists, such as requiring a personal admission to all read-in offenses, that any possible confusion is eliminated.

Some proposed language to deal with the perceived problems is as follows:

> "Read-in crime" means any crime that is uncharged or which is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at sentencing and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted.

DOJ should support the proposed bill with the suggested changes. First, allowing for dismissed read-in charges to be considered for restitution. Second, to change the "admits" language to reflect that a personal admission is not required, as opposed to simply agreeing that the charges be read-in.

308

¶ 99. LOUIS B. BUTLER, JR., J. (*concurring*). I respectfully concur with the majority's mandate affirming the circuit court's order denying Straszkowski's motion to withdraw his guilty plea. However, I write separately because I disagree with the majority's ruling "withdraw[ing] language in the case law that may be read as intimating that when a charge is read in a defendant must admit or is deemed to admit the read-in charge for sentencing purposes." Majority op., ¶ 95. I also disagree with the majority's related admonitions that circuit courts "should not deem a defendant's agreement to have a charge read in for consideration at sentencing and dismissed on the merits to be an admission of guilt of the read-in charge for purposes of sentencing," and that "prosecuting attorneys, defense counsel, and circuit courts should hereafter avoid . . . the terminology 'admit' or 'deemed admitted' in referring to or explaining a defendant's agreement to read-in charges." *Id.*, ¶¶ 91, 93.

¶ 100. A defendant's admission or acknowledgement of wrongdoing is an essential part of the read-in process. If a defendant who committed a crime has not acknowledged what he or she did wrong, why should the defendant benefit from having the charge dismissed with prejudice? On the flip side, an innocent criminal defendant should not be held responsible and accountable for conduct that may have been committed by someone else.

I

¶ 101. Straszkowski's petition for review in this case presented a single issue: whether the trial court erred in denying Straszkowski's motion to withdraw his guilty plea on his assertion his plea was not knowingly and intelligently entered due to his lack of knowledge regarding the effect of a read-in offense. However, the majority has turned this case into a unilateral referen-

dum on the propriety of acknowledging the role of admissions in read-in procedures, despite any party having raised such an issue. This issue becomes the focus of the majority opinion, which ultimately undercuts the long-standing tradition of treating read-ins as admissions under Wisconsin law. I respectfully but strongly disagree with the majority opinion's analysis and conclusion.

## A

¶ 102. The read-in procedure at issue in this case, although unique to Wisconsin, is well-established within this state. The read-in process provides a dual mechanism of, in some cases, helping make a victim whole through restitution to the extent reasonably possible, while in all cases providing the sentencing judge with helpful information about the defendant's rehabilitative needs. *See State v. Sweat,* 208 Wis. 2d 409, 422, 561 N.W.2d 695 (1997). Agreeing to have one's crimes read in for such purposes is an alternative method of accepting responsibility for criminal conduct in lieu of punishment following a full adjudication of the crime. *See State v. Szarkowitz,* 157 Wis. 2d 740, 753, 460 N.W.2d 819 (Ct. App. 1990).

¶ 103. A defendant's agreement to have his or her read-in crimes considered by a sentencing court is governed by Wis. Stat. § 973.20(1r), which requires all sentencing courts to either order restitution or explain why no such order is issued. *See State v. Borst,* 181 Wis. 2d 118, 122, 510 N.W.2d 739 (1993);[1] *State v. Ca-*

---

[1] *State v. Borst,* 181 Wis. 2d 118, 122, 510 N.W.2d 739 (1993), addresses the substantially identical language of Wis. Stat. § 973.20(1) (1991–92), which was later renumbered as subsection (1r).

*nady,* 2000 WI App 87, ¶ 7, 234 Wis. 2d 261, 610 N.W.2d 147. With every read-in case consequently beginning as a presumptive restitution case, a defendant's agreement to have his or her crimes considered for such purposes sends a message to the victim that the person who committed those crimes has acknowledged responsibility for his or her criminal conduct.

¶ 104. Although it has been well established in Wisconsin that agreeing to have one's crimes considered by a sentencing court through a read-in procedure constitutes an admission to those charges, the read-in agreement is only the first step in the process. The next step is that a sentencing court considers those uncharged crimes, along with other proven or unproven offenses, for limited sentencing purposes: "[i]n determining the character of the defendant and the need for his incarceration and rehabilitation, the court must consider whether the crime is an isolated act or a pattern of conduct." *State v. McQuay,* 154 Wis. 2d 116, 126, 452 N.W.2d 377 (1990). *See also Austin v. State,* 49 Wis. 2d 727, 729–30, 183 N.W.2d 56 (1971)(citing *Embry v. State,* 46 Wis. 2d 151, 157, 174 N.W.2d 521 (1970); Annot., *Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant,* 96 A.L.R.2d 768 (1964)). Because "[e]vidence of unproven offenses involving the defendant may be considered by the court for this purpose," *McQuay,* 154 Wis. 2d at 126, whether admitted to or not, the role of read-in agreements as constituting an admission to the charges is relatively minor at this point in the process.

¶ 105. It is during the next step in every read-in process that admissions become significant. In addition to being allowed to consider read-in charges for limited sentencing considerations, sentencing courts are also under a statutory mandate to consider restitution,

either ordering the read-in defendant to pay restitution to the victim or explaining why such an order is not issued. Wis. Stat. § 973.20(1r).

¶ 106. In recognition of the fact that the primary purpose of restitution is to compensate victims, not punish defendants, courts are required "to construe the restitution statute 'broadly and liberally in order to allow victims to recover their losses as a result of a defendant's criminal conduct.'" *State v. Madlock,* 230 Wis. 2d 324, 332, 602 N.W.2d 104 (Ct. App. 1999)(citation omitted). Although read-in crimes are not fully adjudicated, the plain text of Wisconsin's criminal restitution statute indicates that a defendant may be ordered to pay restitution for his or her read-in crimes which were "considered at sentencing" where that acknowledged criminal conduct resulted in compensable injury to the victim. *See infra,* ¶¶ 107-110 (discussing Wis. Stat. § 973.20(1g)(a), (1g)(b), (1r)). As such, it is at the point of a court's restitution deliberations that acknowledgement of that criminal conduct takes on a significant role, rendering admissions an integral part of the read-in and restitution process.

B

¶ 107. The majority focuses on the definition of "read-in crime"[2] in our state's criminal restitution statute, Wis. Stat. § 973.20(1g)(b), without addressing how

---

[2] The majority refers to "read-in crime," "read-in offense," and "read-in charge" interchangeably. Majority op., ¶ 58 n.33. Such terminology does not fairly reflect the legislature's intent, in choosing the phrase "read-in crime," to clarify that the subject of a defendant's read-in agreement is not just a "charge" typed out on a form, but is the actual *criminal conduct by that defendant* which the defendant agrees to have considered for

that definition functions together with the substantive provisions of the statute. By interpreting subsection (1g)(b)'s definition of "read-in crime" without reference to related statutory provisions describing the substantive function of read-in acknowledgments in the restitution process, the majority fails to heed the rule that "[w]hen construing a statutory provision, the entire section and related sections of the statute should be considered," *Sweat*, 208 Wis. 2d at 416, and consequently misses much of the point of § 973.20.

¶ 108. There are many pertinent provisions of Wis. Stat. § 973.20, including those both immediately preceding and following subsection (1g)(b)'s read-in definition, that the majority fails to consider, and which illustrate the nature of a read-in acknowledgement as an admission. For example, the subsection immediately preceding the read-in definition defines a "*crime considered at sentencing*" as "any crime for which the defendant was convicted *and any read-in crime.*" § 973.20(1g)(a) (emphasis added). Subsection (1r) then provides the explicit link between read-ins and restitution, mandating that:

> [w]hen imposing sentence or ordering probation for any crime . . . the court, in addition to any other penalty authorized by law, shall order the defendant to make full or partial restitution under this section to any victim of a *crime considered at sentencing* [i.e., including read-in crimes. See subsection (1g)(a)] . . . unless the court finds substantial reason not to do so and states the reason.

(Emphasis added.) The statute then proceeds to describe the procedural requirements for issuing restitu-

limited sentencing and restitution purposes. *See* 1995 Wis. Act 141; Wis. Stat. § 973.20(1g)(b), (1g)(a), (5)(a).

313

tion, including the mandatory consideration of such factors as the "amount of loss suffered by any victim as a result of a *crime considered at sentencing*." Wis. Stat. § 973.20(13)(a)1. (emphasis added). Subsection (5)(a) further provides:

> (5) In any case, the restitution order may require that the defendant do one or more of the following:
>
> (a) Pay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for *his or her conduct in the commission of a crime* considered at sentencing.

(Emphasis added.)

¶ 109. This description of a defendant's actions being acknowledged as his or her conduct in the commission of a crime by virtue of their having been considered at sentencing illustrates the nature of a read-in agreement as an admission. It is inconsistent with both common sense and the plain language of this statute to conclude, as the majority's approach requires, that a defendant's agreement to have a sentencing court consider "his or her" "conduct in the commission of a crime" does not necessarily include an implicit admission that such criminal conduct by the defendant actually existed. The reason for this is clear; a criminal defendant should not be held responsible and accountable for conduct committed by someone else. Such a ruling would have the practical effect of allowing the real criminals to remain free to perpetrate other offenses on the unwitting public.

¶ 110. The role of deemed admissions may appear to be relatively insignificant in read-in cases such as this one where restitution was not ordered and an admission therefore was not required for the remaining

314

sentencing considerations. However, a defendant's admission *is* a pertinent part of the read-in process as long as Wis. Stat. § 973.20(1r)'s restitution mandate, which applies to all read-in cases, remains pending in a case. Before restitution may be ordered, § 973.20 requires that:

> a causal nexus must be established between the "crime considered at sentencing," Wis. Stat. § 973.20(2), and the disputed damage. In proving causation, a victim must show that *the defendant's criminal activity* was a "substantial factor" in causing damage. . . .
>
> As contemplated by the restitution statute, the "crime considered at sentencing" is defined in broad terms. . . . The sentencing court should consider the defendant's "entire course of conduct."

*Canady,* 234 Wis. 2d 261, ¶¶ 9–10 (citations omitted) (emphasis added); *see also State v. Johnson,* 2005 WI App 201, ¶ 13, 287 Wis. 2d 381, 704 N.W.2d 625 (describing substantial factor proof required for ordering restitution in various ways, including the description that "[p]ut another way, a causal link for restitution purposes is established when 'the defendant's criminal act set into motion events that resulted in the damage or injury' "). There is no language in the restitution statute distinguishing read-in crimes from other "crimes considered at sentencing." Either way, a nexus must be drawn between the victim's injury and what is consistently described as the *defendant's criminal conduct.*[3]

---

[3] These provisions answer any suggestion from the majority that a deemed admission may be too fictitious in nature to serve a proper foundation for restitution. As these additional statutory provisions illustrate, the read-in agreement is only the first step in the process under Wis. Stat. § 973.20; subsequent steps require additional admissions or proof, e.g., of a nexus between

¶ 111. Once Wis. Stat. § 973.20(1g)(b)'s definition of "read-in crimes" is considered, not in isolation but together with this surrounding statutory language, a plain reading of § 973.20 in its full context clearly indicates that by agreeing to a read-in, a defendant agrees to have *his or her criminal conduct* considered at sentencing, not just to have some words, devoid of such context and meaning, read out loud by a court. It is further clear that a defendant's agreement that his or her criminal conduct is to be considered must logically entail an implicit admission by the defendant that such criminal conduct by the defendant *exists.*

¶ 112. Although the court of appeals correctly observed in *State v. Cleaves,* 181 Wis. 2d 73, 80, 510 N.W.2d 143 (Ct. App. 1993), that sentencing courts are not mandated to obtain an express admission with every read in, the court suggested a preferred practice for purposes of clarifying the record: "we suggest that trial courts in the future ask the defendant if there is an admission to the read-in charge for purposes of sentencing consideration." *Id.* at n.1.

¶ 113. I agree with the *Cleaves* court that the best practice is for such clarification to be obtained on the record, by either the defendant's attorney or by the court. It is sufficient to clarify that the defendant has been informed that his or her acknowledgment of read-in charges may be taken as an admission.[4]

___

the defendant's criminal conduct and the victim's injury, and of the restitution amount. *See also Garski v. State,* 75 Wis. 2d 62, 248 N.W.2d 425 (1977); *State v. Gerard,* 57 Wis. 2d 611, 205 N.W.2d 374 (1973). Thus, for restitution purposes, a defendant's acknowledgement of his or her read-in crimes is only the first admission that may be required for a restitution order.

[4] Prior to the read-in proceeding, attorneys for read-in defendants have a mandate of ensuring that their clients

## C

¶ 114. The majority attempts to supplement its analysis with a reference to a Department of Justice Memorandum[5] that describes the legislative intent underlying the 1995 amendments to Wis. Stat. § 973.20 incorporating read-in crimes into the criminal restitution process, including the new "read-in crime" definition in subsection (1g)(b). However, while providing helpful guidance to Wisconsin's read-in and restitution laws, the Memorandum does not support the majority's conclusion.

¶ 115. Rather, the Memorandum expressly describes the legislature's intent to codify *Szarkowitz,* which the Memorandum describes as affirming that "where a defendant agrees to the read-in offenses he is presumed to have admitted the charges." DOJ Memorandum at 1–2 (citing *Szarkowitz,* 157 Wis. 2d at 753). Furthermore, the Memorandum not only concludes by recommending a specific definition of "read-in" crimes, but it also explains that the purpose of the proposed

understand the nature and consequences of the agreements they make in court. The opening preamble of our Rules of Professional Conduct for Attorneys, SCR ch. 20, emphasizes the fundamental principle that a primary responsibility of an attorney is that of an advisor who must "provide[] a client with an informed understanding of the client's legal rights and obligations and explain[] their practical implications." SCR ch. 20 Preamble at [2](2007). *See also* SCR 20:1.4(b)("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."). Notably, Straszkowski does not allege a violation of these rules or ineffective assistance of counsel in this case.

[5] Drafting File, 1995 Wis. Act 141, Correspondence/ Memorandum, Department of Justice, August 11, 1995 (hereinafter "DOJ Memorandum" or "Memorandum"), Legislative Reference Bureau, Madison, Wis.

statutory amendments was to make restitution available for read-in crimes.[6] DOJ Memorandum at 1–2. The majority does not acknowledge any of this language from the Memorandum affirming the relationship between read-in admissions and restitution.

¶ 116. The majority does describe the DOJ Memorandum as citing *Szarkowitz* and *Cleaves* as grounds for objecting to proposed legislative language that would have required a defendant to admit to a read-in offense personally and specifically. Majority op., ¶ 82. However, the majority fails to acknowledge that in rejecting *Cleaves'* personal admission suggestion as too confusing in light of the different types of read-in cases that require admissions to varying degrees (or not at all), the Memorandum expressly describes the legislature's intent to codify *Szarkowitz*. Specifically, the Memorandum warns of the confusion arising from dual processes in which special efforts must be made to seek personal admissions in only restitution cases where personal admissions are required. To ward off such confusion, the Memorandum recommends that rather than go to the extreme of either requiring a personal admission in every case or ignoring the need for admissions entirely, the restitution legislation be drafted to change "the 'admits' language to reflect that a *personal* admission is not required, as opposed to simply agreeing that the charges be read-in." DOJ Memorandum at 2 (emphasis added). Thus, to establish a standard practice appropriate for various scenarios, the Memorandum proposes

---

[6] The Memorandum concludes: "DOJ should support the proposed bill with the suggested changes. First, allowing for dismissed read-in charges to be considered for restitution. Second, to change the 'admits' language to reflect that a personal admission is not required, as opposed to simply agreeing that the charges be read-in." DOJ Memorandum at 2.

the solution eventually enacted by the legislature: the adoption of statutory language comparable to but less stringent than actual personal admission requirements, i.e., statutory language defining a read-in crime in part as a "crime" that the defendant "agrees to" for limited purposes, thereby codifying *Szarkowitz*'s deemed admission approach to read-in crimes. *Id.* at 1–2.

¶ 117. The legislature, following the DOJ's recommendations, similarly embraced the concept of deemed admissions, as evident in the text of the amended statutory language read in its full context. By including within the definition of "read-in crime" the agreement of a defendant to have his or her uncharged or dismissed crimes considered for limited sentencing purposes, this language of Wis. Stat. § 973.20(1g)(b) complements subsection (5)(a), which describes the restitution paid by defendants as corresponding with "his or her conduct in the commission of a crime." As previously discussed, a defendant's agreement to have the court *consider* "his or her [criminal] conduct" under Wis. Stat. § 973.20, read as a whole, logically entails a defendant's acknowledgement of the *existence* of his or her criminal conduct. In this manner, the statutory language suggested by the Memorandum and embraced by our legislature preserves the important role assumed admissions generally play in restitution cases, while alleviating the need for separate personal admissions in every case.

¶ 118. To the extent the majority recognizes that the legislature adopted the DOJ Memorandum, the majority should defer to the legislature's intent to codify *Szarkowitz* by spelling out the relationship between read-in crimes and restitution and by describing the read-in agreements in terms of implicit, not express, admissions. The majority does not do so. Rather,

the majority contends that because the text of Wis. Stat. § 973.20(1g)(b)'s definition of "read-in crime" does not use the word "admission," then reading that statute together with *Austin* and "the subsequent cases" leads to the conclusion that Wisconsin's read-in procedure neither requires admissions, nor even allows a circuit court to deem such an admission from a defendant's agreement to have read-in charges considered at sentencing. Majority op., ¶¶ 91–92.

¶ 119. Not only does the majority's approach to the read-in process fail to take into account pertinent statutory and case law authority related to the relationships among read-ins, restitution, and admissions, but it also fails to recognize the actual problem which the DOJ and legislature intended to remedy through the new statutory "read-in crime" definition. The DOJ Memorandum exhibits no substantive concerns with the concept of deemed admissions, but rather addresses the procedural problems related to inconsistent applications of admission requirements in read-in cases due to a diminished need for admissions in cases where restitution is not ordered. The Memorandum resolves the procedural problem created by the variation among types of read-in cases and corresponding admission requirements by implementing a standard definition of read-in crimes as crimes acknowledged for sentencing consideration purposes without requiring more explicit admissions in every read-in case.

## D

¶ 120. The majority describes *Austin* as the first Wisconsin case extensively describing read-in procedures. Majority op., ¶ 59. *Austin* describes a growing number of appeals addressing the read-in procedure, and proceeds to engage in what it describes as a

"review" of those cases. *Austin,* 49 Wis. 2d at 729. *Austin* singles out one such case from the previous year describing the read-in procedure; in that case, *Austin* stated, "we explained the read-in procedures as follows:"

> [The read-in procedure is] a practice in this state, especially in Milwaukee, of charging a multiple offender with two or more offenses for which the evidence is most conclusive and bringing the judge's attention to additional uncharged offenses prior to sentencing. Upon agreement between the state and the accused, the judge may take these offenses into consideration and the prosecution agrees not to prosecute. It is expected the uncharged crimes will influence the length of the sentence for the crime or crimes the defendant has been found guilty of or to which he has plead guilty. The advantage of this technique to the accused is that he can clean his slate of several uncharged crimes with the safety of only receiving at the most the maximum sentence on the one or two crimes of which he is convicted.

*Austin,* 49 Wis. 2d at 730 (quoting *Embry,* 46 Wis. 2d at 157–58). The read-in process was similarly described in a 1969 case in which this court explained that a defendant may expressly agree

> to allow the judge to consider unproven offenses so that, should the state later attempt to prosecute him, he could successfully assert the defense of double jeopardy. . . . [U]nder this agreement [a judge cannot], under any circumstances, sentence him for the proven crimes to a term longer than that permitted by statute.

*State v. Smith,* 45 Wis. 2d 39, 42, 172 N.W.2d 18 (1969).

¶ 121. *Austin* also identifies Wisconsin's read-in procedure as akin to the long-standing English practice of "taking into account" uncharged offenses at the request of the accused, while not issuing a conviction for such (read-in) offenses. *Austin,* 49 Wis. 2d at 732

(citation omitted). *See also United States v. Haygood,* 502 F.2d 166, 170 & n.10 (7th Cir. 1974). *Austin's* acknowledgement of the English procedure as akin to Wisconsin's is significant because the older English procedure to which our state's read-in roots can be traced describes pleas alternatively as "admissions" and as "asking for offenses to be taken into consideration," with these two phrases being used synonymously. *See Haygood,* 502 F.2d at 170 & n.10 (citation omitted).

¶ 122. The majority then misidentifies the 1990 court of appeals *Szarkowitz* decision as the turning point at which Wisconsin courts began recognizing read-in acknowledgements as deemed admissions. *See* majority op., ¶ 69. The recognition that a read-in agreement is in and of itself a type of presumptive admission did not originate with *Szarkowitz's* holding that "when a defendant agrees to crimes being read in at the time of sentencing, he makes an admission that he committed those crimes." *Szarkowitz,* 157 Wis. 2d at 753. *Szarkowitz* explains that this distinct procedure of allowing courts to consider offenses without charges being brought "has long been recognized," particularly "where the defendant's guilt of such other offenses was admitted *or* was not denied." *Id.* at 753–54 & n.3 (citation omitted)(emphasis added).

¶ 123. This court also explained the role that admissions play in read-in restitution cases in *Garski v. State,* 75 Wis. 2d 62, 248 N.W.2d 425 (1977). In that case, this court contrasted an older restitution statute which had required defendants either to have been convicted or to have "freely admit[ted]" their wrongs before restitution could apply with the new restitution statute, Wis. Stat. § 973.09(1), under which requirements were relaxed, allowing restitution where "reasonable and appropriate." *Id.* at 71. *Garski* further cited

*State v. Gerard,* 57 Wis. 2d 611, 205 N.W.2d 374 (1973), which explains that it is only in cases where the face of the record does not already establish the amount of losses caused by the defendant's criminal acts that the defendant's personal and explicit admission pertaining to the amount of restitution is also required. *Garski,* 75 Wis. 2d at 71.[7]

¶ 124. In addition, the cases interpreting Wis. Stat. § 973.20 illustrate that it is because a defendant pays restitution for those injuries arising from "his or her conduct in the commission of a crime" that some sort of acknowledgement of those crimes must usually be made prior to restitution.[8] Perhaps being overly focused on the case before it which does not involve a restitution order,[9] the majority suffers from a bad case of tunnel vision which prevents it from seeing the important role admissions generally play in read-in cases as a result of statutorily required restitution considerations.

---

[7] Thus, admissions play a dual role in read-in cases, which (1) must always establish general grounds for restitution in the form of a defendant's acknowledgment of the sentencing court's consideration of his or her criminal conduct (i.e., the criminal conduct the defendant engaged in), which courts may deem to be the equivalent of an admission for sentencing and restitution purposes; and (2) only in some cases, for example where the record alone does not clearly establish the restitution amount, require a more express personal admission of the grounds for and/or amount of restitution.

[8] *See* Wis. Stat. § 973.20(5)(a); *State v. Johnson,* 2005 WI App 201, ¶ 13, 287 Wis. 2d 381, 704 N.W.2d 625; *State v. Canady,* 2000 WI App 87, ¶ 9, 234 Wis. 2d 261, 610 N.W.2d 147.

[9] This would not be a problem if the majority's decision focused on the narrow issues presented by this case, rather than issuing a sweeping ruling that affects all read-in cases, and most detrimentally affecting those involving restitution orders.

¶ 125. Furthermore, the majority relies on an alleged conflict between *Austin* and other cases to justify curtailing the role of admissions in the read-in process. Majority op., ¶¶ 88–92. However, the majority's perception of such a conflict appears to be based on a misinterpretation of *Austin* as generally requiring explicit personal admissions from read-in defendants, unlike other cases which recognize that admissions may be deemed through the read-in acknowledgement.

¶ 126. Contrary to the majority's suggestions, *Austin* does not contain any language either requiring a personal admission or precluding deemed admissions. Rather, *Austin* describes read-in charges synonymously with "admitted" charges, explaining that under our read-in procedures, a defendant "does not plead to any charges and therefore is not sentenced on any of the read-in charges but such *admitted* uncharged offenses are considered in sentencing him on the charged offense." *Austin,* 49 Wis. 2d at 732 (emphasis added). In *Szarkowitz,* 157 Wis. 2d at 753, which interpreted and applied *Austin,* the court of appeals similarly observed that " '[i]n Wisconsin, when a defendant agrees to crimes being read in at the time of sentencing, he makes an admission that he committed those crimes."

¶ 127. In *Cleaves,* the court of appeals interpreted these passages from *Austin* and *Szarkowitz* as indicating that a read-in constitutes an admission: "when a defendant agrees to the read-in, *he or she admits that the crimes occurred." Cleaves,* 181 Wis. 2d at 78 (emphasis added). Consequently, the court concluded, because the defendant in that case "did not object to the crimes being read in, he admitted them." *Id.* at 79.

¶ 128. *Cleaves* further explains that this process of deeming admissions from read-in agreements is a

natural extension of deeming restitution amounts from a defendant's failure to object to them. *Cleaves* highlights the following passage from *Szarkowitz* which explains the parallels between a court's ability to assume that read-in crimes not objected to are admitted, and its corresponding ability to assume that restitution amounts not objected to are similarly admitted:

> The use of the word "stipulate" in sec. 973.20(13)(c) does not imply a requirement of a formal written stipulation, signed by the defendant, as to the amount of restitution claimed. We hold that, in the absence of any objection to amounts claimed on a court-ordered restitution summary accompanying a presentence investigation, where a defendant has been given notice of the contents of that report and summary, the trial court is entitled to proceed on the understanding that the claimed amount is not in dispute, and so order restitution under sec. 973.20(13)(c).

*Szarkowitz,* 157 Wis. 2d at 749. As *Cleaves* explains, "the same reasoning applies" to deemed assumptions through read-in, in which, "[i]n the absence of any objection to the crimes being read in, the court may assume that the defendant admits them for purposes of being considered at sentencing." *Cleaves,* 181 Wis. 2d at 80.

¶ 129. These cases clearly describe the parallel relationship between admissions and objections at the initial read-in stage and at the restitution hearing stage, with a failure to object to either read-in crimes or restitution amounts potentially sufficing as a deemed admission of the crime, in the one case, or the restitution amount in the other. However, the majority maintains that, contrary to the interpretation of *Cleaves'* (and the DOJ's) description of *Austin, Austin* describes the read-in process as requiring that a defendant must

make an additional express admission during the read-in process, beyond merely agreeing to have the read-in crimes considered. Majority op., ¶ 66.

¶ 130. The majority does acknowledge that *Austin* leaves open the possibility that, as cases interpreting *Austin* have explained, a defendant's admission may be deemed from the defendant's agreement to have the read-in charges considered. Majority op., ¶ 72. However, the majority also rejects that interpretation, concluding that *Austin*'s description of read-in agreements in terms of admissions must have been referring only to express, not assumed, admissions because *Austin,* a decision cited by *Austin* (*Pulaski v. State,* 23 Wis. 2d 138, 126 N.W.2d 625 (1964)), and another read-in case we have discussed (*Gerard,* 57 Wis. 2d 611) contained procedural histories mentioning actual admissions by defendants. Majority op., ¶¶ 63–67, 91–92. Therefore, the majority appears to conclude, *Austin*'s holding must have been only as broad as the facts of that particular case; *Austin*'s general description of read-in procedures could not have been so inclusive as to allow admissions to be encompassed implicitly through the read-in acknowledgement itself in other cases. *See majority op., ¶¶ 63–67, 91–92.*

¶ 131. In its description of *Austin* as describing actual, not deemed, admissions, the majority also focuses on a passage in *Szarkowitz* describing *Austin* as holding that "when a defendant agrees to crimes being read in at the time of sentencing, he makes an admission that he committed those crimes." Majority op., ¶ 71 (quoting *Szarkowitz,* 157 Wis. 2d at 753). The majority offers that this sentence is not clear on its face but can potentially be interpreted as referring either to an implicit or an express admission. Majority op., ¶ 72.

¶ 132. This passage from *Szarkowitz,* as well as the original language in *Austin,* is much more clear than the majority contends and does *not* require the type of separate express admission the majority describes. First, the DOJ Memorandum, as previously described, explicitly explains that it was the legislature's intent to codify *Szarkowitz*'s holding, which the Memorandum describes in part as clarifying that "where a defendant agrees to the read-in offenses he is presumed to have admitted the charges." DOJ Memorandum at 1–2 (citing *Szarkowitz,* 157 Wis. 2d at 753).

¶ 133. Second, the language in *Szarkowitz* is clear on its face. The statement that when a defendant agrees to read-in "he makes an admission" is purely descriptive, not proscriptive, language. If it had the proscriptive meaning urged by the majority, i.e., describing what a defendant must *do* during the read-in process as opposed to describing a read-in agreement as itself being an admission, *Szarkowitz* would have stated that when a defendant agrees to have charges read-in, he must also make an explicit admission of guilt.

¶ 134. *Szarkowitz* simply does not contain such language. After identifying the legislative intent of Assembly Bill 467 as the codification of *Szarkowitz,* the DOJ Memorandum aptly explains:

> As stated in *Szarkowitz,* "When a defendant agrees to the crimes being read in at sentencing, he makes an admission that he committed those crimes." *Szarkowitz,* 157 Wis. 2d at 753. The question is only whether the defendant agreed to the crimes being read-in. *Szarkowitz,* 157 Wis. 2d at 753. *Thus, where a defendant agrees to the read-in offenses he is presumed to have admitted the charges.*

DOJ Memorandum at 1–2 (emphasis added).

¶ 135. Similarly, nothing in *Austin* contradicts the complementary holdings of later cases such as *Cleaves, Garski,* or *Szarkowitz,* which illustrate that in read-in cases, a court may deem a defendant to have admitted his or her crimes when the defendant agrees to have those read-in crimes considered for limited sentencing and restitution purposes. The majority's interpretation of *Austin* might be more persuasive if the majority were correct that *Austin* was this court's first decision extensively describing Wisconsin's read-in procedure, and if *Austin* also specified that it was setting forth a read-in procedure which requires an personal admission separate from the agreement to have one's read-in crimes considered by a sentencing court. However, *Austin* contains neither the first description of Wisconsin's read-in procedure nor any language requiring an additional explicit admission of guilt beyond the agreement to have one's crimes read-in and considered.

¶ 136. Nor should *Austin* be read as implicitly requiring such explicit admissions merely because the background facts of *Austin* happened to include an actual admission. *Austin* itself explicitly states that "[u]nder our read-in procedure, the defendant does not plead to any charges," and describes the read-in procedure by quoting *Embry,* which does not describe a personal admission requirement. *Austin,* 49 Wis. 2d at 732, 729–30 (quoting *Embry,* 46 Wis. 2d at 157).

¶ 137. Consequently, the existence of an actual admission in the background facts of any given case does not translate to a rule requiring that *all* read-in cases involve such an actual admission. The only reasonable reading of *Austin* is to continue reading it exactly as Wisconsin courts have read it over the years: as establishing that by agreeing to a sentencing

court's consideration of read-in crimes, a defendant may be assumed to be admitting to those crimes.

¶ 138. The majority acknowledges that recent cases have described the read-in procedure as involving either deemed or actual admissions. *See* majority op., ¶ 89 (citing *State v. Lackershire,* 2007 WI 74, ¶ 27 n.7, 301 Wis. 2d 418, 734 N.W.2d 23; *State v. Martel,* 2003 WI 70, ¶ 26, 262 Wis. 2d 483, 664 N.W.2d 69; *State v. Floyd,* 2000 WI 14, ¶ 25, 232 Wis. 2d 767, 606 N.W.2d 155). However, the majority's subsequent description of these cases as being in conflict with each other, to the point of calling into question the entire practice of deeming admissions from read-in agreements, is unfortunately overstated.

¶ 139. Rather, each of these three cases describes read-ins as admissions. *Floyd* explicitly describes read-ins in such terms, as the majority acknowledges by quoting *Floyd*'s language that "read-ins constitute admissions by the defendant to those charges." Majority op., ¶ 89 (quoting *Floyd,* 232 Wis. 2d 767, ¶ 25). As the majority further acknowledges, *Lackershire* similarly states that "[w]hen charges are read in during sentencing, the defendant admits to having committed the underlying crimes." *Id.* (quoting language in *Lackershire,* 301 Wis. 2d 418, ¶ 27 n.7, which is nearly identical to *Szarkowitz*'s deemed admission language). *See supra,* ¶¶ 35–38 (discussing language in *Szarkowitz,* 157 Wis. 2d at 753, that "when a defendant agrees to crimes being read in at the time of sentencing, he makes an admission that he committed those crimes"). Even *Martel,* in a passage omitted from the majority opinion, similarly describes *Austin* as holding that "offenses that are dismissed and read in *are admitted* by the defendant for purposes of consideration at sentenc-

ing on the crimes or crimes for which the defendant is convicted." *Martel,* 262 Wis. 2d 483, ¶ 21 (emphasis added).

¶ 140. In another attempt to identify conflict among read-in cases, the majority cites *Robinson v. West Allis,* 2000 WI 126, ¶ 42, 239 Wis. 2d 595, 619 N.W.2d 692, and describes that case as holding that read-ins "are not otherwise treated as adjudications of guilt." Majority op., ¶ 90. *Robinson,* however, is not inconsistent with the other read-in cases. Adjudication of guilt is not the same thing as a voluntary admission of one's criminal conduct for read-in purposes.

¶ 141. The majority ultimately concludes that the role of admissions in read-in cases is too confusing to allow courts and attorneys to even mention admission in reference to read-in procedures. However, while claiming such an irreconcilable conflict exists, the majority has failed to point to a single case that holds that personal admissions are expressly required; that holds that read-in agreements are not deemed admissions; or that in any way implies that no type of admission, either express or implicit, is required in the read-in process, as the majority concludes.

¶ 142. It may be true that not every read-in case discusses read-in admissions in exactly the same way, largely because of the varying degree to which restitution may or may not be considered in a given case. For example, *Cleaves* and *Szarkowitz* both involved actual restitution orders, making it more necessary for the decisions in those cases to spell out the exact nature of the admission required as a prerequisite in such cases. In cases such as *Austin,* in contrast, where restitution was not at issue, the role of admissions was not as pertinent. In those cases, it was not therefore necessary to spell out with as much specificity.

¶ 143. What *is* consistently described in our statutes, legislative history and case law, however, is that in all read-in cases, admissions are to some degree a part of the process. Furthermore, those cases and statutory provisions addressing restitution specifically make it clear that by acknowledging that one's criminal conduct may be considered for read-in purposes, as required for restitution, a read-in defendant is admitting that such criminal conduct exists.

¶ 144. Consequently, I am not troubled by some decisions discussing the role of deemed read-in admissions more explicitly than others, considering the fact that not all cases involve restitution orders. I also accept without any trouble our legislature's chosen accommodation of such variety through a path that grants sentencing courts the flexibility necessary to accommodate different types of read-in cases with correspondingly different degrees of admission requirements for restitution purposes.

¶ 145. The majority, on the other hand, seems surprisingly troubled by the variation among cases, which overwhelmingly apply the same broad principles to different sets of facts, as is standard in any area of the law. The majority does not recognize that any variation in read-in cases is largely one of emphasis and different factual backgrounds; the cases are consistent in their recognition of read-in acknowledgements as admissions of one's criminal conduct, as described by Wis. Stat. § 973.20.

¶ 146. By instead focusing on isolated cases and statutory language read out of their full context, the majority appears to have missed the critical role that criminal accountability and acceptance of responsibility play in the history of the read-in procedure. Our state did not establish read-in procedures for the purpose of

creating just another negotiation chip and bargaining tool for case settlement. To the contrary, our legislature has explicitly described read-in as part of the restitution process, and consequently, a method of allowing defendants to compensate victims for acknowledged criminal conduct without having those crimes fully adjudicated. *See especially* Wis. Stat. § 973.20(5)(a) (specifying that restitution orders may require a defendant to pay special damages that could be recovered in a civil action "against the defendant *for his or her conduct* in the commission of a crime considered at sentencing")(emphasis added). This is not just an important principle for general purposes of ensuring constitutional justice, but it is a policy the legislature explicitly endorsed, and which therefore should not be undermined by this court.

## II

¶ 147. I have set forth the reasons why I disagree with the majority's analysis. I now return to the reason I concur: I agree with the majority's conclusion that Straszkowski has failed to demonstrate any manifest injustice resulting from the circuit court's refusal to let him withdraw his plea.

¶ 148. Straszkowski argues that under either a *Bangert* or a *Nelson/Bentley* analysis, his plea was not knowingly and intelligently entered because the circuit court failed to notify him of the effects of the read-in offense during the plea bargain. *See also* majority op., ¶ 30; *State v. Bentley,* 201 Wis. 2d 303, 548 N.W.2d 50 (1996); *State v. Bangert,* 131 Wis. 2d 246, 270–72, 389 N.W.2d 12 (1986); *Nelson v. State,* 54 Wis. 2d 489, 195 N.W.2d 629 (1972). In support of this argument, Straszkowski primarily cites what he describes as the circuit

court's failure to notify him that the read-in sexual offense was deemed admitted for purposes of sentencing.

¶ 149. However, the circuit court expressly ruled that it was *not* deeming the read-in offense an admission or awarding restitution. In addition, informing a defendant that admissions may be deemed is not informing a defendant of an "effect," but is rather a description of a general precondition for granting restitution. The actual effects of agreeing to read-in charges *were* clearly explained and consented to, as evidenced by the plea questionnaire and waiver of rights form signed by Straszkowski, indicating that he understood "that if any charges are read-in as part of a plea agreement they have the following effects," followed by an accurate description of the ways in which read-in charges may affect sentencing, restitution and future prosecution. Furthermore, as the State correctly points out, "[i]t is simply not credible that Straszkowski knew that the court could take his conduct in committing the read-in sexual assault into consideration at sentencing, in other words assume his guilt for that offense, [while at the same time did not know] that agreeing to a read-in involved an admission of guilt for that offense."

¶ 150. This case parallels *Garski* with respect to the issue of whether the circuit courts in each case failed to inform defendants about the effect of their read-ins. In this case, Straszkowski argues that the circuit court erred in not informing him it could deem his read-in charges admitted at sentencing. In *Garski,* the defendant had similarly argued that the trial court never informed him that it could order restitution. *See Garski,* 75 Wis. 2d at 75. Citing *Austin,* this court in *Garski* did recommend that courts advise defendants of

the effect of read-ins, "including that the judge may take these offenses into consideration when sentencing," but this court also concluded that the information given to the defendant had been sufficient, there being no additional requirement that courts explain to offenders prior to accepting pleas that restitution may be imposed. *Id.* at 76–77.

¶ 151. In this case, Straszkowski received more information about the effects of read-ins than the defendant in *Garski,* even conceding he was told that he could be ordered to pay restitution for the read-in crime. If under *Garski* we concluded that less information was adequate, the information given to Straszkowski in this case, which described the effects of read-in in the context of restitution, was adequate as well.

¶ 152. As such, any error in this case was harmless. Under Wis. Stat. § 805.18(2), we will not reverse the judgment of a circuit court unless an examination of the record reveals that the error was not harmless, but had affected the defendant's substantial rights. We determine whether there has been harmless error by looking at the totality of the circumstances. *State v. Harris,* 2008 WI 15, ¶ 48, 307 Wis. 2d 555, 745 N.W.2d 397. We have previously applied the harmless error test to review denied requests to withdraw guilty pleas, explaining that in such cases, the standard is whether the alleged error "sufficiently undermines the court's confidence in the outcome of the judicial proceeding." *See id.,* ¶ 42 (citing *State v. Harris,* 2004 WI 64, ¶¶ 27, 30–31, 33, 34, 272 Wis. 2d 80, 680 N.W.2d 737).

III

¶ 153. In sum, I concur with the majority's affirmation of the circuit court's order denying Straszkowski's motion to withdraw his guilty plea, due to

Straszkowski's failure to establish any prejudicial error or manifest injustice resulting from the circuit court's denial of his plea withdrawal request. However, I strongly disagree with the majority's statement and related analysis that circuit courts "should not deem a defendant's agreement to have a charge read in for consideration at sentencing and dismissed on the merits to be an admission of guilt of the read-in charge for purposes of sentencing," and that "prosecuting attorneys, defense counsel, and circuit courts should hereafter avoid . . . the terminology 'admit' or 'deemed admitted' in referring to or explaining a defendant's agreement to read-in charges." *Majority op.,* ¶¶ 92, 94.

¶ 154. I also respectfully but strongly disagree with the majority's ruling that "withdraw[s] language in the case law that may be read as intimating that when a charge is read in a defendant must admit or is deemed to admit the read-in charge for sentencing purposes." Majority op., ¶ 95. The history of Wisconsin read-in law reflects a consistent recognition by all three branches of our state government—represented by our courts, the legislature, and the Department of Justice, who have all weighed in on this issue—that an agreement to have one's crimes read in may be interpreted as an admission of those crimes. It is unclear how the majority's opinion will affect our state's longstanding traditions and precedents related to read-in procedures. In the end, however, we remain constrained by the legislative mandates of Wis. Stat. § 973.20 which clearly describe restitution in terms of a defendant's payment for his or her criminal conduct, which the defendant necessarily acknowledges by virtue of agreeing to the sentencing court's consideration of his or her crimes. A defendant, quite simply, cannot agree that his or her conduct in the commission of a crime may be considered without

335

clearly implying (and thereby implicitly admitting) that such conduct existed in the first place. The majority, unfortunately, insists on such a semantic distinction, contrary to Wisconsin's statutory and case law to date.

¶ 155. We should not send the message to victims that those who injured them can pay off their crimes monetarily without ever acknowledging responsibility for their actions. It would be anathema to our system of justice and truth-seeking to eliminate the requirement that a person either be proven guilty or acknowledge one's criminal conduct before paying a victim restitution for that crime.

¶ 156. For the foregoing reasons, I respectfully concur.

¶ 157. I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this concurrence.